ELK RIVER CONCRETE PRODUCTS COMPANY v. AMERICAN
CASUALTY COMPANY OF READING, PENNSYLVANIA.
STA-VIS OIL COMPANY v. SAME.
NORTHFIELD IRON & CULVERT COMPANY v. SAME.

114 N. W. (2d) 655.

April 6, 1962—Nos. 38,484, 38,485, 38,486.

*Guesmer, Carson, MacGregor, Clifford & Pratt,* for appellant.

*Thomas, King, Daubney, Swenson & Collatz,* for respondents Sta-Vis Oil Company and Northfield Iron & Culvert Company.

*Dorsey, Owen, Barber, Marquart & Windhorst,* for respondent Elk River Concrete Products Company.

*Frank Hammond* and *Briggs & Morgan,* for Raymond Fischer, amicus curiae and third-party defendant below.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs, Elk River Concrete Products Company, Sta-Vis Oil Company, and Northfield Iron & Culvert Company, all corporations, are claimants under separate public contractor's bonds executed by defendant, American Casualty Company of Reading, Pennsylvania, a corporation, as surety, for and on behalf of H. J. Fredrickson, contractor in three separate highway contracts with the Department of Highways of the State of Minnesota, for unpaid charges for materials furnished Fredrickson under such contracts.

For its defense American Casualty Company, hereafter referred to as American, asserted that plaintiffs had not filed their respective claims within 90 days after the completion of the respective contracts and their acceptance by the proper public authorities as required under Minn. St. 574.31, which provides:

"No action shall be maintained on any such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, * * *."

In support of this contention American relies upon certain specifications which form part of the contracts and which provide:

"1907.4 Final Acceptance of the Project

"When an inspection by the Engineer shows that all work required by the Contract has been completed in accordance with the terms thereof, he will so certify and *the Commissioner will forthwith accept the workmanship and materials in the entire Project* and relieve the Contractor from any future responsibility therefor." (Italics supplied.)

"1908 Final Payment

"*After the Project has been accepted, the Engineer will prepare a final statement showing the quantities of each and every item of work performed by the Contractor. * * ** 

"Upon the execution of the 'Certificate for Final Payment' by the Contractor and his presentation of the written approval of the Surety or Sureties, the State will make final payment; * * *." (Italics supplied.)

Based upon the foregoing requirements, American contends that undisputed facts here compel a determination that the various contracts were completed and accepted on the date the final vouchers were submitted to the contractor by the Department of Highways in accordance with the specifications which clearly indicate the intent of the Department of Highways to accept the project; and that such final vouchers, together with the transmittal letters accompanying them, constituted the final expression by the Department of Highways of its acceptance of the contracts; or that in any event at least the acceptance would have been complete upon the expiration of 90 days from such events.

It is stipulated between the parties that in connection with the three contracts the Department of Highways had submitted final vouchers to H. J. Fredrickson, the contractor; that American had then consented in writing to final payment to the contractor of such vouchers; that in each of the contracts a final certificate executed by the project engineer, the district engineer, and the construction engineer, together with final reports, had been filed with the Department of Highways; that Fredrickson had never returned the final vouchers submitted to him to the Department of Highways; and that the state had never paid him the amount due thereon. It is also undisputed that the respective

claims of plaintiffs were not filed until long after 90 days from the occurrence of the events above described; but that in the interval plaintiffs made numerous inquiries of the Department of Highways to ascertain if the contracts had been accepted by the commissioner and on each of such occasions were advised that the contracts had not been accepted.

Based upon the stipulated facts, the trial court granted summary judgment for Elk River Concrete Products Company on its first and third causes of action; for Sta-Vis Oil Company on its two causes of action; and for Northfield Iron & Culvert Company on its first cause of action. In its memorandum opinion, the trial court set forth the following:

"It is clear that the ninety day period does not begin to run until there has been both the completion of the contract and the *acceptance thereof by the proper public authorities*. The statute does not further define either completion or acceptance.

\* \* \* \* \*

"As is evidenced by the substantial number of exhibits which are attached to the stipulations, all of the details which were necessary to be completed before the final estimate was sent to the contractor were concluded. Likewise, it appears that all computations relating to the work done and materials used were made, partial payments which were made were deducted from the amount due and a final figure as far as the Highway Department was concerned were arrived at. The submission of the final voucher to the contractor pursuant to \* \* \* the Specifications together with the itemized final statement of work performed certainly indicates the views of the Highway Department as to the entire quantity and value of each and every item performed under the contract. \* \* \* There appears to be no disagreement between the parties that the contracts were completed and that the date of completion was no later than the time the final voucher was sent out by the Highway Department. The only issue remaining and the decisive one is when were the contracts accepted, if they were in fact accepted.

"American urges that everything relating to the contracts was done

and all that remained undone was the signature of the Commissioner or the Assistant Commissioner certifying that the contract was accepted. American contends that there was only a ministerial act remaining to be done. For an act to be solely ministerial it must be an act in which there is no discretion. * * * A casual examination of the provisions of M. S. A. 161.20 et seq. indicates that he is not a mere ministerial officer and his acts of approval or acceptance in matters conferred by law necessarily involve discretion. * * *

"It is further contended that in view of * * * the specifications there was a final acceptance of the contracts when the inspection by the engineer showed that all work required by the contract had been completed and the final voucher was submitted to the contractor. * * * that this follows because Section 1908 of the Specifications provides that final payment is to be made after the project has been completed and then provides the steps to be taken for such final payment. * * * that it follows that acceptance was in fact made when the final voucher was sent out to the contractor. * * * that if acceptance was not had then, then it was had after expiration of the ninety day period within which the contractor had to make adjustments. * * * Until the Highway Department determined what adjustments, if any, were to be allowed and what they represented in money, it is not reasonable to expect that the contract would be accepted by the Commissioner. * * * it would seem that acceptance of the *project* would not necessarily mean acceptance of the *contract*. Support for this is found in Exhibit 10 relating to the McGrath contract and Exhibit 4 relating to the Hibbing contract. These are communications to the Chief Engineer signed by the project engineer, the district engineer and the construction engineer indicating that the work has been examined, that the contractor be released from further compliance with the requirements of certain sections of the Specifications and the road be taken over by the Maintenance Department. These exhibits then state, 'This is in no manner to be considered as an acceptance of the contract by the Commissioner of Highways.' Hence the date of submission of the final voucher is not regarded as the date of acceptance of the contract. Under the existing practice the contractor is given ninety days after submission of the final voucher to make adjust-

ments in the final figures submitted by the Highway Department. It is urged that acceptance in fact took place after the expiration of this ninety day period since the contractor here did not request any such adjustments. Where adjustments are not requested, nothing is perceived which would require the Commissioner to accept the contract ninety days after submission of the final voucher. Nothing has been submitted which indicates that there is any requirement that the Commissioner must accept the contract within a given time. While it would seem reasonable that if a contract is acceptable it should be accepted within a reasonable time, nothing in the stipulations of facts indicates that it must be done at a certain time or a certain time after a certain event or events. It follows that acceptance of the contracts was not had after the expiration of the ninety day period within which the contractor could make adjustments." (Italics supplied.)

With respect to third-party defendant, Raymond Fischer, who is an indemnitor on one of the bonds furnished for the contractor by American, the court stated:

"* * * Since Fischer is not a party to the stipulations of facts, * * * it is obvious that there must be a trial of certain issues where Fischer is a party. * * * Fischer * * * urges that the submission of the matters by the stipulations of facts and by way of the summary judgment procedure might cause a result different from that which may occur when the cases to which Fischer is a party are tried not upon stipulated facts but on actual testimony. * * * The third-party defendant is bound by any determination in the original action that the defendant is liable to plaintiff. * * * where, as here, there is only a stipulation of facts between the original plaintiff and the original defendant, which the third-party defendant refuses to sign, it would appear as to the cases to which Fischer is a party, the summary judgment procedure would deprive Fischer of some rights with respect to the manner in which the defenses to the plaintiffs' claims are handled and litigated.

"* * * However, it would seem to be an unwarranted extension of rights to the third-party defendant to permit him to thwart the disposition of other cases to which he is not a party by summary judgment

simply because of a similarity of issues. * * * Where, as here, we can accommodate and dispose of two lawsuits in the Elk River case, two lawsuits in the Sta-Vis case, and one in the Northfield, making a total of five, without jeopardizing Fischer's rights, it seems advisable to do so. * * * Therefore, the Court concludes that these five lawsuits can be disposed of by summary judgment, and as to the remainder of the causes of action to which Fischer is a party, summary judgment will be denied and they will be for trial."

American has instituted the present appeals from judgments respectively in favor of Elk River Concrete Products Company; Sta-Vis Oil Company; and Northfield Iron & Culvert Company, entered pursuant to the above orders.

■ We are of the opinion that the trial court was correct in determining that plaintiffs' notices of claims under the various contracts were filed within the limitations provided in § 574.31, and in granting summary judgment on that basis. The provisions of § 574.31 are clear and definite. Thereunder, not only must the work be completed, but also the contract is required to have been *accepted* by the proper authorities before the 90-day limitation period for filing claims provided for therein commences. Section 1907.4 of the contract specifications designates the commissioner of highways as the proper public authority for such acceptance, and the latter may withhold acceptance until he has definitely ascertained that all contract requirements have been met. Here, the record definitely establishes that the commissioner of highways at no time has approved the vouchers for final payments or accepted the contracts involved. In Wheeler Lbr. Bridge & Supply Co. v. Seaboard Surety Co. 218 Minn. 443, 447, 450, 16 N. W. (2d) 519, 521, 522, where this court construed § 574.31, we stated:

"* * * When did the 90-day period of limitation begin to run? Clearly, the statute requires both *completion* of the contract and *acceptance* of the job before the limitation begins. Here, time of completion is not an issue; only the *time of acceptance* is.

"* * * Because of the extensive scope of the department's activities, it seems highly desirable that the *time of acceptance* should be made certain and readily available to those who have performed labor or

furnished material on the job. The performance of a highway contract may, and frequently does, involve extensive areas and require many months for completion. Where and to what office or officer must a claimant go to ascertain when the statutory period of limitation has begun? * * * We think the department's promulgation of rules, regulations, and 'specifications' setting out the procedural steps to be taken in all cases of this kind are appropriate and desirable, since thereby the exact *time of acceptance* is made certain, and no materialman or laborer interested in its ascertainment need go astray in determining with exactness when his notice must be filed.

\* \* \* \* \*

"* * * Absent any showing that he [the commissioner] intended any of his agents or appointees to take his place by delegation of authority or otherwise, it follows that *the commissioner's act* is the one to which we must look to ascertain the true date of final acceptance." (Italics partially supplied.)

■ Minn. St. 161.34,[1] relied upon by American, does not relate to suits on a public contractor's bond but rather to the time in which the contractor may bring suit against the state after completion of the contract. There is nothing in this section inconsistent with the court's determination in Wheeler Lbr. Bridge & Supply Co. v. Seaboard Surety Co. *supra.* Likewise, American's contention that the commissioner should be deemed to have accepted the contract when the work is taken over and occupied, and no claim for changes or alterations is thereafter made, would fix an acceptance date so indefinite and uncertain as to be hazardous to persons furnishing labor and material

---

[1]Minn. St. 161.34 provides: "Subdivision 1. When a controversy arises out of any contract for the construction or repair of state trunk highways entered into by the commissioner or by his authority, in respect to which controversy a party to the contract would be entitled to redress against the state, * * * the state hereby waives immunity from suit * * *.

"Subd. 2. No such action shall be maintained unless commenced within 90 days after the plaintiff has been furnished by the state with a final estimate under his contract, or, at the election of the plaintiff, within six months after the work provided for under his contract shall have been * * * completed."

under such contract and seeking to protect their rights under public contractor's bonds furnished in connection therewith. As this court stated in the Wheeler case (218 Minn. 448, 16 N. W. [2d] 522):

"* * * Defendant's theory leaves no sure guide. In fact, there is nothing approximating certainty of time within which one must act. That, surely, is a situation to be avoided."

In the Wheeler case we held that the commissioner's act in executing the final written acceptance fixed with definite certainty the commencement of the time within which persons who have performed labor or furnished material under public contracts must move to protect their rights under the bond. Based on that determination and in reliance thereon, claimants here were justified in waiting for such final acceptance by the commissioner before proceeding against the surety on the bonds.

■ There has been no determination of the rights of third-party defendant. At the request of the contractor, he executed the bond application involved in one of the contracts, and as an independent indemnitor agreed to indemnify American on its liability as surety under the bond to be furnished therein. He is not a party to this appeal, but has filed a brief amicus curiae. Therein he adopts the brief of American as stating the law applicable to the stipulated facts. He is not a party to the stipulation of facts. The claims for which he may be held liable involve those of Elk River Concrete Products Company; Northfield Iron & Culvert Company; and a claim of Borchert-Ingersoll which does not appear to be involved here. In his answer to the third-party complaints of American against him, he denied liability upon the grounds that there was no consideration for his indemnity agreement; and that American in no way relied thereon. In addition he has asserted counterclaims against American covering rental of equipment by him to Fredrickson under two of the contracts in sums totaling over $20,000, for which he has filed notices of claim under the public contractor's bonds of American.

This court can only pass upon matters presented through proper appellate procedures. Its decision herein cannot be conditioned upon what some litigant might establish in future litigation. The stipulation

of fact submitted herein is binding only upon the parties thereto who are properly before this court. Our decision is based thereon and limited to the facts established thereby, and we are in accord with the trial court's conclusion that, since the five lawsuits of respondents here can be disposed of by summary judgment without jeopardizing Fischer's rights, it seems advisable to do so. As to the remainder of the causes of action to which Fischer is a party, they may be determined in subsequent proceedings which will follow our determination here.

The judgments appealed from are affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.