The MAXSON
CORPORATION, Respondent,

v.

GARY KING CONSTRUCTION
COMPANY, Defendant,

Indemnity Insurance Company of
North America, Appellant.

No. C8–84–1633.

Court of Appeals of Minnesota.

March 12, 1985.

John G. Patterson, Moore, Costello & Hart, St. Paul, for respondent.

Mark Alexis Masica, Alan Stiegler, Minneapolis, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Maxson seeks to recover on a surety bond issued by appellant Indemnity Insurance Company. The trial court, interpreting the meaning of "acceptance" in Minn.Stat. § 574.31 (1982), found that respondent Maxson was entitled to summary judgment. We affirm.

## FACTS

On March 23, 1982, Anoka County and Gary King Construction Company ("King") entered into a contract. King agreed to furnish labor and materials for construction of a bridge. Incorporated within that contract was the Minnesota Department of Transportation "Standard Specifications for Highway Construction", dated January 1, 1978 ("MDOT Specifications"), including section 1516.2, entitled "Final Acceptance", which provides in relevant part:

> When final inspection reveals that all work has been completed in accordance with the terms of the Contract, the Project Engineer will so notify the Contractor in writing, on the date of final inspection. The materials and workmanship will then be accepted forthwith, relieving the Contractor of further responsibility therefor.
>
> Acceptance of work, as provided for herein, shall not relieve the Contractor of any financial liabilities imposed on him by statute, nor shall it constitute final acceptance of the Contract. Final acceptance of the Contract will not be made until the contractor has executed and

returned the "Certificate of Final Acceptance", contained on the final voucher.

On May 6, 1982, King entered into a written contract with respondent Maxson Corporation ("Maxson"); Maxson agreed to supply steel reinforcing bars for the construction of the bridge. Maxson delivered the bars to King at a cost of $13,574.51. Maxson never received payment from King.

The parties agree that King completed its work on the bridge on or about September 14, 1982.

On October 7, 1982, Anoka County provided King with a "Contract Voucher" document in the amount of $10,636.36 for the final payment due under the contract. The voucher contained a "Certificate of Final Acceptance" which was to be executed by King and returned to the county. As of February 24, 1984, King had not returned the executed certificate to Anoka County, and had not received the final payment.

On October 12, 1982, the Anoka County Board of Commissioners ("Board") passed a motion "accepting" the construction of the bridge, and approving payment to King in the amount of $10,636.36, subject to the approval of the County Attorney as to form and legality.

Appellant had earlier issued the surety bond for King on the project. On January 31, 1983, 111 days after the Board passed the resolution accepting the bridge, Maxson filed a notice of claim with the Anoka County Auditor, pursuant to Minn.Stat. § 574.31.

At the time Maxson filed its notice of claim, King had not executed and returned to Anoka County the contract voucher containing the "Certificate of Final Acceptance".

Maxson commenced this action in July 1983, against both King and Appellant. Default judgment was entered against King in September 1983. Maxson found King judgment-proof.

Maxson then brought a motion for summary judgment against the surety company and the motion was granted. The surety commenced this appeal.

## ISSUE

Whether the motion adopted by the Anoka County Board of County Commissioners on October 12, 1982, constituted "acceptance thereof by the proper public authorities" pursuant to Minn.Stat. § 574.31, thereby commencing the 90 day period in which to file a claim against a surety on a construction bond.

## ANALYSIS

Maxson attempted to recover the amount due from King on King's surety bond, which was issued by appellant. Maxson filed its claim against Indemnity 111 days after the Board passed its motion "accepting" the bridge construction, but before King had submitted its "Certificate of Final Acceptance." Minn.Stat. § 574.31 provides the time limits for an action on a contractor's bond. That statute provides in relevant part:

> No action shall be maintained on any such bond unless within 90 days after the completion of the contract and *acceptance thereof by the proper public authorities*, the claimant shall file a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, * * * and, *in case the contract is let by any county*, municipal corporation, or other public board or body, *then such notice shall be filed in the office of the auditor* of the county letting the contract or the county in which such municipal corporation, public board or body is situate, * * *.

Minn.Stat. § 574.31 (1982) (emphasis added).

Both parties concede that the bridge work was "completed" within the meaning of the statute on September 14, 1982. If the Board's motion constituted "acceptance", then Maxson's action was not commenced within the statutory 90 day period, and cannot be maintained. If the Board's motion did not constitute acceptance, and the MDOT definition of "final acceptance"

applies, then Maxson is entitled to maintain the action because the certificate of final acceptance had not yet been executed at the time Maxson filed its notice of claim.

The purpose of the statute is:

to protect laborers and materialmen who perform labor or furnish material for the execution of a public work to which the mechanic's lien statute does not apply.

*Ceco Steel Products Corp. v. Tapager,* 208 Minn. 367, 370, 294 N.W. 210, 212 (1940).

 Strict compliance with Minn.Stat. § 574.31 is a condition precedent to the bringing of an action against a surety on a contractor's bond. *Spetz & Berg, Inc. v. Luckie Construction Co., Inc.,* 353 N.W.2d 233, 235 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Nov. 9, 1984). The statute of limitations does not begin to run until the contract has been both completed and accepted. *Wheeler Lumber Bridge & Supply Co. v. Seaboard Surety Co.,* 218 Minn. 443, 447, 16 N.W.2d 519, 521 (1944).

Appellant contends that *Alexander Construction Co. v. C & H Contracting, Inc.,* 354 N.W.2d 535 (Minn.Ct.App.1984), is controlling. In *Alexander,* this court held that a notice of claim was timely when it was filed before the City Council formally resolved to accept it. *Id.* at 538. *Alexander,* however, did not have to address the issue in this case: the effect of contract language specifically defining final acceptance. The case is distinguishable.

The supreme court has addressed the issue in a case where a similar definition of final acceptance was applicable. In *Wheeler Lumber,* the court found that the definition of final acceptance should be used because:

We think the department's promulgation of rules, regulations, and "specifications" setting out the procedural steps to be taken in all cases of this kind are appropriate and desirable, since thereby the exact *time of acceptance* is made certain, and no materialman or laborer interested in its ascertainment need go astray in determining with exactness when his notice must be filed.

218 Minn. at 448, 16 N.W.2d at 522 (emphasis in original). *See also Elk River Concrete Products Co. v. American Casualty Co.,* 262 Minn. 310, 114 N.W.2d 655 (1962).

**DECISION**

 The contract provisions determine the act constituting acceptance. Because the respondent filed its notice prior to the time that final acceptance occurred, its notice was timely under Minn.Stat. § 574.31 (1982).

Affirmed.