LEONARD CO-OPERATIVE CREAMERY ASSOCIATION v. FIRST STATE BANK OF LEONARD AND OTHERS.[1]

June 18, 1926.

No. 25,430.

**State bank may secure depositor by its bond, with its officers as sureties, to pay present and future deposits.**

Plaintiff carried the usual checking account with defendant bank. It concluded to withdraw the account unless the bank furnished a bond to protect it from loss. The bank executed and delivered a bond with its president and vice president as sureties. *Held*:

(1)   The continuation of the checking account with the bank was a sufficient consideration to support the agreement of the sureties.

(2)   The sureties were not entitled to any notice that the plaintiff accepted the bond.

(3)   The language used in the condition of the bond construed.

[1]Reported in 209 N. W. 631.

(4) A state bank may execute and deliver such bond as an incidental power.

Banks and Banking, 7 C. J. p. 592 n. 70.
Principal and Surety, 32 Cyc. p. 52 n. 67; p. 55 n. 97; p. 118 n. 78.

———

See 21 R. C. L. 959.
See note in 45 L. R. A. (N. S.) 950.

Action in the district court for Clearwater county. The case was tried before Stanton, J., who ordered judgment in favor of plaintiff. Defendants Kolden and Payne appealed from an order denying their motion for a new trial. Affirmed.

*W. E. Rowe,* for appellants.
*Graham M. Torrance,* for respondent.

WILSON, C. J.

Appeal from an order denying a motion for a new trial.

Plaintiff carried its checking account with defendant bank. Appellants were the president and vice president, respectively, of said bank. The account was a desirable one. Plaintiff decided to discontinue the business unless the bank furnished it a bond against loss. Appellants so understanding the situation and for the purpose of holding the business for the bank caused the bank to execute and deliver to plaintiff such bond in the sum of $5,000 and they individually became sureties thereon. Because thereof the account was kept. The bank failed. This action is to recover $2,884.91, the amount of the checking account due plaintiff.

1. The continuation of the checking account with the bank was a sufficient consideration to support the agreement of the sureties. Whether they as individuals because of their interest or position in the bank were benefited in a way that would be a consideration, we need not consider. Ordinarily a surety on a bond acts gratuitously. But the consideration passing to the principal is sufficient.

2. Appellants contend that they never received any notice that the plaintiff accepted the bond. That was not necessary. The language of the bond is absolute. It was delivered unconditionally. An

acceptance was not required in order to make it effective contractually. This proposition has been put beyond controversy by the case of Midland Nat. Bank v. Security Elev. Co. 161 Minn. 30, 200 N. W. 851.

3. There was apparently a bungle in expressing the condition of the bond. It contains this:

"Shall well and truly hold said funds subject to  *  *  *  check and payment, at all times on demand  *  *  *  all funds belonging to said corporation which may hereafter be or have heretofore been deposited in said bank remaining unpaid at the time of the delivery and approval of this bond, and shall well and truly pay over on demand, according to law, all of said funds which shall be deposited in said bank."

It is suggested that this bond required the payment only of money in the bank at "the time of the delivery and approval of this bond." We cannot so construe the instrument. Obviously that is not what the parties intended. The language immediately following may well be construed as relating to other and additional money aside from that included in the restricted construction. No one has been deceived or misled by the unfortunate use of the language mentioned.

4. Appellants now say that the bank was without authority or power to furnish the bond in question. By G. S. 1923, § 7660, a state bank is given certain specified powers and also "all the usual and incidental powers and privileges belonging to such business." We see no reason why this kind of transaction is not an incidental power. Inherently it is not detrimental to either the stockholders, depositors or to the public. It may be beneficial to all. In case of insolvency the transaction has not increased the liability to the detriment of others. It is not like the bank hypothecating some of its own assets to secure the particular depositor which in case of failure would be detrimental to other depositors. A transaction of that character was condemned in Commercial B. & T. Co. v. Citizens T. & G. Co. 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166. Banks may by giving such a bond be able to procure deposits which otherwise they would never have. The inci-

dental power necessarily implies that a bank may give such bond. It does not increase the bank's liability beyond that which would result if the deposit was received without the bond. Whether the bank should in fact furnish it and pay the premium usually incident to a surety bond rest in the judgment of the management. The incidental expense is trivial. The incidental possibilities may be as important and valuable as they may be attractive. While not directly in point the case of Francois v. Lewis, 68 Minn. 409, 71 N. W. 621, has some bearing. We have no difficulty in reaching the conclusion that the giving of the bond was within the incidental powers of the bank.

Affirmed.