ELK RIVER CONCRETE PRODUCTS COMPANY
v. AMERICAN CASUALTY COMPANY OF READING,
PENNSYLVANIA.
RAYMOND FISCHER, THIRD-PARTY DEFENDANT.
BORCHERT-INGERSOLL, INC. v. SAME.
NORTHFIELD IRON AND CULVERT COMPANY v. SAME.

129 N. W. (2d) 309.

May 29, 1964—No. 39,152.

*Frank Hammond, David C. Forsberg, Richard H. Kyle,* and *Briggs & Morgan,* for appellant.

*Donald F. Pratt* and *Townsend, Pratt, Trench, Ericson & MacGregor,* for respondent American Casualty Company.

*Michael N. Lyons, Jr.,* for respondent Borchert-Ingersoll, Inc.

*Paul C. Thomas* and *Thomas, King, Daubney, Swenson & Collatz,* for respondent Northfield Iron and Culvert Company.

*Peter Dorsey* and *Dorsey, Owen, Marquart, Windhorst & West,* for respondent Elk River Concrete Products Company.

SHERAN, JUSTICE.

Appeal from an order of the district court denying the motion of third-party defendant for a new trial.

Plaintiffs, Elk River Concrete Products Company, Borchert-Ingersoll, Inc., and Northfield Iron and Culvert Company (hereinafter called suppliers), furnished material and equipment to Howard J. Fredrickson who had contracted with the State of Minnesota for road construction at Hibbing, McGrath, and Littlefork. Defendant and third-party plaintiff, American Casualty Company of Reading, Pennsylvania, (hereinafter called American) was Fredrickson's corporate surety on all of these projects. Raymond Fischer, third-party defendant, executed an agreement to indemnify American against loss sustained by it on account of the Littlefork job. Also, Fischer performed part of the construction work at Hibbing and McGrath in conformity with a subcontract secured from Fredrickson.

Plaintiffs each instituted a separate action against American to recover sums owed by Fredrickson for material and equipment. American, by its separate answers, acknowledged that it was surety on the statutory bond filed in each instance as required by Minn. St. 574.26;[1] admitted that each of the plaintiffs had supplied materials and services; and claimed as a defense that each of the suppliers had failed to file a written notice of claim prior to the expiration of 90 days after the completion of the contract and acceptance thereof by the proper public authorities—a statutory condition precedent to action against the surety on the bond.[2]

---

[1] Minn. St. 574.26 provides: "No contract with the state * * * for the doing of any public work, shall be valid for any purpose, unless the contractor shall give bond to the state * * * for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials * * *, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill, materials, * * *. The penalty of such bond shall be not less than the contract price * * *."

[2] Minn. St. 574.31 provides: "No action shall be maintained on any such bond unless within 90 days *after the completion of the contract and acceptance thereof* by the proper public authorities, the claimant shall file a written notice * * *." (Italics supplied.)

American joined Fischer as a third-party defendant to secure indemnity with respect to claims of plaintiffs attributable to construction at Littlefork. Fischer, by amended answers, disputed the timeliness of the statutory notice of claim filed by the plaintiffs and attacked the validity and binding effect of the indemnity agreement executed by him.[3] He also asserted a counterclaim against American on the theory that if the notices filed by the plaintiffs were timely, similar notices filed by Fischer with respect to the work done by him as subcontractor on the Hibbing and McGrath jobs also met the statutory requirement and entitled him to recover from American for work done pursuant to the subcontracts but not paid for by Fredrickson.[4]

On the theory that action on a statutory bond is triable by the court without a jury, the district judge heard evidence on the issue of timely notice and, ultimately, found in plaintiffs' favor on this question.[5] The issues raised by American's third-party complaint against Fischer were litigated before a jury, which at the close of the evidence was directed by the trial court to confirm answers to interrogatories,[6] the effect of which was to determine that the indemnity agreement was not induced by fraud or misrepresentation; was supported by consideration; and had not been nullified by actions of American prejudicial to

---

[3]Rules of Civil Procedure, Rule 14.01, provides in part: "* * * The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."

[4]See, Rules of Civil Procedure, Rule 8.05(2); Meagher v. Kavli, 251 Minn. 477, 88 N. W. (2d) 871.

[5]As to the right to a jury trial in such actions, see Rules of Civil Procedure, Rule 38.01; Macleod v. National Surety Co. 133 Minn. 351, 158 N. W. 619; Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351; 72 C. J. S., Principal and Surety, § 250; 2B Barron and Holtzoff, Federal Practice and Procedure, § 872; James, *Right to a Jury Trial in Civil Actions*, 72 Yale L. J. 655. See, also, R. P. Farnsworth & Co. v. Electrical Supply Co. (5 Cir.) 112 F. (2d) 150, 130 A. L. R. 192.

[6]This is acceptable procedure. Rules of Civil Procedure, Rule 49; Majerus v. Guelsow, 262 Minn. 1, 113 N. W. (2d) 450; Wintersberger v. Pioneer Iron & Metal Co. 6 Wis. (2d) 69, 94 N. W. (2d) 136. See, also, 89 C. J. S., Trial, § 567, note 58.

Fischer. The trial court then proceeded to determine that Fischer had a valid setoff against American by reason of work done by him at Hibbing and McGrath.

The findings of fact and conclusions of law which were made and entered in these actions came to this: Plaintiffs are entitled to judgment against American because of Fredrickson's failure to pay for supplies and materials furnished by them at McGrath, Hibbing, and Littlefork. American is entitled to indemnity against Fischer for so much of the resulting loss suffered by it as is traceable to the Littlefork project. The counterclaim of Fischer for services performed at McGrath and Hibbing is good as against American. If judgments were entered pursuant to the order for judgment the net result would be an obligation on Fischer's part to pay American approximately $15,000.

■ Upon appeal, Fischer argues that American is unjustly enriched and reasons:

(a) The obligation of Fischer to indemnify American for losses resulting from the operations of Fredrickson was limited to the Littlefork job.

(b) If the money earned by Fredrickson at Littlefork had been used to pay bills incurred by him in performing that contract American would have sustained no loss on account of that job; and there would be no reason for it to claim indemnity against Fischer.

(c) Instead Fredrickson used some of this money to pay obligations incurred by reason of performance of his contract on the Hibbing and McGrath projects.

(d) If he hadn't done so, American, as Fredrickson's surety, would have sustained loss on the McGrath and Hibbing bonds. It would then have had no claim against Fischer because his agreement to indemnify covered Littlefork only.

The result, Fischer contends, is that American has benefited at his expense. Fredrickson, he insists, was dutybound to apply payments received on the Littlefork job to the satisfaction of Littlefork bills. If he had done so, the loss occasioned by Fredrickson's insolvency would have fallen on American as surety on the McGrath and Hibbing projects and Fischer would not have been involved.

If such a duty, express or implied, can be spelled out of the facts appearing in this record, there is substantial authority to support Fischer's contention, at least where the person benefited by the breach of duty encourages or acquiesces in it.[7]

It is our opinion, however, that no such duty exists here. In Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291, the successful bidder entered a contract with the state and furnished a surety bond. During progress of the work, he made payment to a subcontractor to whom he had let a portion of the job. The subcontractor turned this money over to a supplier of material used in performance of the subcontract. The supplier applied the payment on an obligation owed by the subcontractor to it but unrelated to the subcontract. Thereafter, the supplier made claim against the contractor and his surety for the material used in performance of the subcontract. It collected even though it knew that the money previously paid to it by the subcontractor was received by him on account of the work for which the materials were supplied. The result is that a contractor may be required to pay twice for materials—once to the subcontractor and again to the subcontractor's supplier. And in the Standard Oil Company case the supplier acted with full knowledge of the facts.

It could be argued that the subcontractor agreed *implicitly* to apply payments received on account of contract work to the payment of bills incurred in performing. Such a promise is not implied, however, in the case of the subcontractor because, as stated in the Standard Oil Company case (161 Minn. 287, 201 N. W. 412, 41 A. L. R. 1291):

"* * * Most contractors and subcontractors must necessarily use some of their money that they receive in payment of obligations not incurred in the particular contract from which their money is received. When they receive their money unconditionally, it is their own and they may do with it as they please."

We believe that the reasoning in that case applies here. If a paid subcontractor is not under a duty toward a contractor and his surety to

---

[7]See, Restatement, Restitution, § 1; 46 Am. Jur., Restitution and Unjust Enrichment, p. 99.

apply the money received to discharge bills which, if unpaid, give rise to obligations on the contractor's bond, we cannot say that he has such a duty toward an indemnitor similarly exposed.

■ The trial court determined that the contract on account of which the statutory bond had been filed had not been accepted at the time plaintiffs filed notice of claim as required by Minn. St. 574.31. Issue as to the timeliness of the notices had been joined initially between plaintiffs and the defendant who entered into a stipulation of the relevant facts which was not binding on the third-party defendant. In due course, the third-party defendant also contested the timeliness of the notices and on this appeal he contends that he was entitled to a jury trial on this question. If the trial court was correct in its conclusion that the contract had not been accepted by the state prior to the time of the filing of the notices, it was correct as a matter of law, and no prejudice resulted from failure to submit the question to the jury. Only if acceptance as a matter of law is not supported by the record, need the right to a jury trial be considered.[8] In number 4 of this opinion that aspect of the problem will be considered.

■ Fischer further argues that he was released from liability to American because the conduct of the surety increased his risk of loss and prejudiced his rights.

■ The claim of prejudice is based in part on the fact that at an early stage of this litigation the suppliers and the surety entered a detailed stipulation of facts which Fischer has consistently refused to accept. Based on this stipulation of facts, the trial court granted summary judgment in favor of suppliers on causes of action to which Fischer was not a party and which are not directly involved at this time. In connection with this earlier litigation, an appeal was taken to this court, and in Elk River Concrete Products Co. v. American Cas. Co. 262 Minn. 310, 114 N. W. (2d) 655, it was held that upon the facts stipulated the construction contracts had not been accepted as of the time notice of claim was filed. It is now contended by Fischer that

---

[8]See, Olson v. Evert, 224 Minn. 528, 28 N. W. (2d) 753; Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649; Kernan v. St. Paul City Ry. Co. 64 Minn. 312, 67 N. W. 71.

the stipulation of facts cannot be held binding on him; that without the stipulation of facts there was a failure on the part of plaintiffs to sustain their burden of proving timely filing of their notices of claim; and that the stipulation by American was improvident and inaccurate causing prejudice to Fischer in his attempt to establish the failure of plaintiffs to file notice within the time specified by the statute.

Fischer says that on the record now before us there are no Highway Department rules and procedures governing the time for acceptance of contracts other than those set forth in the relevant portions of the Highway Department's specifications, and that these specifications, particularly those numbered 1907 and 1908, contain language reflecting that, in some instances at least, a highway construction job may be "accepted" by the Highway Department even though the final voucher has not been finally certified for payment by the commissioner of highways. It is acknowledged in this case that the final voucher was not finally certified for payment by the commissioner of highways with respect to the construction projects involved, but it is contended that the suppliers' burden of proving timely filing of notice is not sustained merely because this fact is admitted. Although in Wheeler Lbr. Bridge & Supply Co. v. Seaboard Surety Co. 218 Minn. 443, 16 N. W. (2d) 519, it was held that a contract is not accepted by the Highway Department until the final voucher has been approved by the commissioner of highways, Fischer argues that this decision cannot control here because the determination of the date of the acceptance in the cited case turned upon departmental procedures, as disclosed by the record there, which might or might not have been followed at the time relevant to this case.

The burden of showing that the contract had not been accepted by the State of Minnesota more than 90 days before the filing of the notices of claim was upon plaintiffs.[9] The final voucher had not

---

[9]See, Shandorf v. Sampson, 198 Minn. 92, 95, 268 N. W. 841, 842: "* * * The statute clearly makes the filing of such notice condition precedent to the bringing of any action on contractors' bonds. * * *

"It follows, therefore, that plaintiff is not entitled to recover in this action unless he can show timely notice and commencement of action."

been signed by the commissioner. An employee of the Highway Department testified that, in the ordinary case, a job is not treated as accepted by the department until the final voucher has been approved by the commissioner. This made a prima facie case of nonacceptance. If some different test of acceptance was applicable in this case, it was for Fischer to go forward with the evidence. He did not do so. Offers of proof tendered by him would not have been sufficient to overcome the prima facie case even though the evidence offered had been received. It follows from this determination that the failure to submit this question to the jury for its consideration was not prejudicial error.[10] We do not agree that American, by entering the stipulation of facts, interfered with Fischer's opportunity to establish acceptance of the contract at a time more than 90 days prior to the filing of notice in such a manner as to create prejudice, in a legal sense, of such a nature as to release his obligation as indemnitor.

■ Fischer was not released from liability because of the failure of American to take possession of equipment owned by Fredrickson at the end of the Littlefork job. Paragraph 6(a) of the indemnity agreement contains an assignment to American of Fredrickson's interests in

---

Minn. St. 574.26 and 574.31; Rules of Civil Procedure, Rule 9.03; Ceco Steel Products Corp. v. Tapager, 208 Minn. 367, 371, 294 N. W. 210, 213: "Plaintiffs, as the beneficiaries of the bond, must bear the burden of showing statutory compliance on their part before they can avail themselves of the benefits thereof. Grant v. Berrisford, 94 Minn. 45, 49, 101 N. W. 940, 942, 1133." 1A Barron and Holtzoff, Federal Practice and Procedure (Rules ed.) § 304, p. 231: "* * * [T]he pleader must allege such compliance [with conditions precedent] or that performance * * * was waived * * *, though the omission of allegations showing performance or occurrence of conditions precedent may be cured by amendment.

"* * * In most instances no question is raised about the performance of conditions precedent, and Rule 9(c) [Federal Rules of Procedure] thus puts the burden on defendant to raise such an issue * * *. This does not shift the burden of proof however. * * * [T]he burden is on plaintiff to show that performance or occurrence took place."

[10]See, Minneapolis Fire & Marine Ins. Co. v. B. & O. R. Co. 237 Minn. 111, 53 N. W. (2d) 828, 33 A. L. R. (2d) 860; 9 Wigmore, Evidence (3 ed.) § 2487; McCormick, Evidence, § 306.

his business assets only in the event of abandonment, default, forfeiture, or breach of the contract and bond; or in the event of the company's making an advancement or loan for the purposes of the contract; or in the event of the company's having sustained loss or expense because of having executed the bond. There is no showing that any of these events occurred at a time when American was in a position to take possession of the personalty involved. Its mere inaction or passive negligence in failing to resort to the collateral is not sufficient of itself to release the indemnitor from his obligation to pay the debt. Manchester Sav. Bank v. Lynch, 151 Minn. 349, 186 N. W. 794, 50 A. L. R. 1210. Finally, paragraph 13 of the indemnity agreement provides that the liability of an indemnitor shall not be affected by "the release of any indemnity or security that may have been taken by, or the return or exchange of any collateral that may have been deposited with, the surety or sureties executing any such bond."[11]

■ Although the trial court took evidence before the jury with respect to Fischer's attack on the indemnity agreement, it ruled against Fischer on this aspect of the case as a matter of law by directing the jury to confirm certain answers to interrogatories formulated by the court. Fischer contends that this procedure makes a new trial necessary. This would be the case only if the evidence was such as to make a fact question as to whether (a) indemnity agreement is supported by consideration, or (b) Fischer's agreement to indemnify is void or voidable.

■ As of the time Fischer executed the indemnity agreement, American was surety on Fredrickson's bid bond in the principal sum of $17,500. However, there was no legal obligation on the part of American to execute as surety the statutory bond to secure performance of the principal contract.[12] The indemnity agreement provides specifical-

[11]See, American Surety Co. v. Thurber, 121 N. Y. 655, 23 N. E. 1129; 42 C. J. S., Indemnity, § 40.

[12]See, Federal Contracting Co. v. City of St. Paul, 177 Minn. 329, 225 N. W. 149; Independent School Dist. No. 24 v. Weinmann, 243 Minn. 469, 474, 68 N. W. (2d) 248, 252: "* * * [Bidder's] subjective belief that the surety writing the bid bond would also write the performance bond does not necessarily bind [the bid bond surety] * * *."

ly that it was made for the purpose of inducing American to execute this bond. The performance of an action by American which it was not legally obligated to perform in exchange for Fischer's agreement to indemnify it in the event of loss gives the required consideration.[13] The testimony in the record by an employee of American, to the effect that American might have executed the bond as surety without this agreement having been made by Fischer, if otherwise satisfied that it could do so without exposure to loss, does not change the situation. Consideration appears as a matter of law.

██ We do not find in this record any evidence which could have supported a jury finding that Fischer was fraudulently induced to execute the agreement. We note, also, that the indemnity agreement provides that Fischer as indemnitor waives "[a]ny right to claim any release from liability under this Agreement because of any thing done or omitted to be done by the Surety."

██ The effect of this affirmance is that Fischer as indemnitor suffers a loss resulting from the insolvency of Fredrickson. Fischer is not responsible for the fact that Fredrickson was unable to pay his bills. The only basis for shifting the incidence of loss to him is because he agreed to indemnify American. It can be assumed that Fischer had good reason for exposing himself to this risk. He had had business transactions with Fredrickson not only on this job but several others during the period from 1952 until Fredrickson's insolvency. He was paid in full for the work that he did on the Littlefork job. In so far as he was unable to obtain full payment for the work done by him on the Hibbing and McGrath jobs, he was allowed compensation against American in its capacity as Fredrickson's surety on those projects. We can assume that he took the risk of acting as indemnitor because he thought it to be good business for him to do so. It is true that he suf-

---

[13]See, Hartung v. Billmeier, 243 Minn. 148, 154, 66 N. W. (2d) 784, 789: "Any lawful act or forbearance of value performed by the promisee, in addition to or different from that which he already is obligated to render either by law or contract, is a sufficient consideration for a unilateral contract." See, also, Leonard Co-op. Creamery Assn. v. First State Bank, 168 Minn. 28, 209 N. W. 631.

fers because earnings from the Littlefork job were used to pay bills incurred at Hibbing and McGrath, but no attempt was made to show that this allocation of payments was caused by any misconduct or overreaching on the part of American. So far as the record shows, Fredrickson used money from the Littlefork job to pay bills incurred in connection with the Hibbing and McGrath projects because the bills were due and the creditors were demanding payment. This is not an unusual situation in the contracting business, and in the absence of agreement, or a situation coming within the purview of § 514.02, is not contrary to any statute or rule of law enunciated by this court. An indemnitor can avoid such exposure to the risk of loss not attributable to the performance of the contract giving rise to his indemnity agreement by refusing to sign as indemnitor except upon condition that the proceeds of the indemnified contract be applied in payment of bills arising from its performance. The very fact that the surety requests the indemnity agreement should put a person in the position of Fischer on notice that the contractor is not considered a prime risk by the surety. There would be no occasion for the indemnity agreement if the assets of the contractor were considered adequate to guard the surety against ultimate loss. While it is true that the surety company is compensated for its services in executing the bond required by the statute, it is also true that those engaged in the compensated surety business will not execute such bonds unless they are first satisfied that they will be able to recoup any loss sustained by reason of the suretyship. Where, as here, a company becomes surety in reliance upon the indemnity agreement, and so indicates in writing, there is no reason of which we are aware why the courts of this state should exert either legal or equitable powers to remove the loss from the shoulders of the party upon whom it has fallen.

Affirmed.