FIDELITY BANK AND TRUST
COMPANY, Appellant,

v.

John R. FITZIMONS, Respondent.

No. 47259.

Supreme Court of Minnesota.

Nov. 18, 1977.

Carlsen, Greiner & Law and Thomas K. Berg, Minneapolis, for appellant.

Zimmerman & Bix and Milton H. Bix, Minneapolis, for respondent.

Heard before SHERAN, C. J., and PETERSON and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal from an order of the Hennepin County District Court denying plaintiff's alternative motion for amended and supplemental findings of fact, conclusions of law and order for judgment, or a new trial. Plaintiff sought recovery on a guaranty contract signed by defendant. The trial court sitting without a jury held that defendant was not liable on the contract because plaintiff failed to prove the primary obligation on which the guaranty depended. We reverse.

1. The proper motion would have been a motion to dismiss under Rule 41.02(2), Rules of Civil Procedure.

The trial evidence consisted of the testimony of one witness, David M. Gilman, plaintiff's executive vice president, and three exhibits introduced by plaintiff. Defendant rested without putting in any evidence. His motion for a "directed verdict" was denied.[1]

Gilman's testimony was uncontradicted and unobjected to for the most part; cross-examination showed that his memory was unclear as to certain details of the transaction and parties involved. He testified that a loan was made by plaintiff to Klad-Ezee, Inc. (hereafter Klad-Ezee). The loan was for $23,000 and was evidenced by a bank money order for that amount. The bank money order showed Klad-Ezee as remitter and Creative Marketing Executives, Inc. (hereafter Creative Marketing) as payee. The loan was made on January 17, 1972, and on the same date defendant, John R. Fitzimons, an officer of Klad-Ezee, signed a document entitled "Contract of Guarantee." Gilman testified that the bank money order was payable to Creative Marketing which held an account receivable from Klad-Ezee. Creative Marketing had assigned the Klad-Ezee receivable to Southwest Fidelity State Bank (hereafter Southwest) to secure a loan. Defendant had directed the money order be made out to Creative Marketing.

Gilman testified that a corporate promissory note had been signed by defendant on January 17, 1972, but that after it was subsequently renewed, the note was returned to the borrower; no copy was kept.[2] The bank's commercial loan ledger was introduced into evidence as a business record. It showed a $23,000 loan to Klad-Ezee made on January 17, 1972, renewed on November 9, 1972, and never repaid. Gilman testified that the original debt was unsecured, but that collateral was obtained in November 1972, apparently when the note was renewed. Gilman testified that the loan was made in reliance on the defendant's person-

2. Although the renewal note was apparently in the courtroom for reference, it was never introduced into evidence.

al guaranty and on a credit check of Klad-Ezee.

On cross-examination defendant attempted to elicit testimony showing that Klad-Ezee and Creative Marketing received no benefit from the loan. The endorsement on the money order was a standard endorsement used by a bank when there is no specific endorsement by the payee. It stated that it was credited to the account of the payee. Gilman was not certain whether the money was deposited to Creative Marketing's account at Southwest.[3]

Gilman admitted that it was possible that the bank had contacted defendant about the loan; that plaintiff and Southwest had "similar ownership;" that no written loan application was ever made; that neither Klad-Ezee nor Creative Marketing had done business at plaintiff bank; that no account was ever opened for Klad-Ezee; and that Klad-Ezee never received the money directly. Gilman testified that the loan was made according to standard banking procedures. The trial court found that no money was ever received by Klad-Ezee or Creative Marketing, but that there was a direct, interbank transfer by means of the "check" payable to the order of Creative Marketing. A demand was made by plaintiff on Klad-Ezee and defendant, but the loan was not repaid.

This case presents the following issue:

Was the trial court's finding that no credit was extended by plaintiff to Klad-Ezee clearly erroneous?[4]

■ If the trial court had found that a loan was made, it is clear from the trial court's memorandum that the defendant would have been held liable. In effect, the trial court concluded that plaintiff's evidence was insufficient to create a prima facie case, although it could withstand a motion to dismiss.[5]

The findings of a trial court may not be set aside unless they are clearly erroneous. Rule 52.01, Rules of Civil Procedure. A finding is clearly erroneous if—

"* * * 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

Due regard must also be given to the trial court's opportunity to observe the witnesses and assess their credibility. *Werner v. Miller*, 248 Minn. 75, 78 N.W.2d 63 (1956). Rule 52.01, Rules of Civil Procedure.

In *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305, certiorari denied sub nom. *Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), this court reaffirmed the holding of *In re Estate of Balafas* and set out standards by which an appellate court could determine whether it should defer to a trial court's assessment of the evidence. This court, following *Orvis v. Higgins*, 180 F.2d 537, 539 (2 Cir. 1950), held:

"' * * * Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine

---

3. At one point he testified that it was "to the best of my knowledge," and later he made the "assumption."

4. Finding III states in part: "No money was ever received by Klad-Ezee, Inc. * * *." This is equivalent to a finding that no credit was ever extended to Klad-Ezee and therefore that no loan was made. An alternative finding which would support the conclusion that credit was extended is a finding that money was remitted to Creative Marketing at Klad-Ezee's request. This is also contrary to Finding III. The trial court's memorandum which accompanied the order for a new trial makes it clear

that Finding III is in effect a finding that no credit was extended to Klad-Ezee.

5. The standard of review changes when the trial court dismisses a case under Rule 41.02(2) and makes findings. A bare dismissal would call for a view of the evidence most favorable to the plaintiff. *Arens v. Minneapolis-Moline, Inc.*, 298 Minn. 521, 213 N.W.2d 336 (1972). However, under the preferred practice of the trial court's making written findings, the review standard is that of Rule 52.01. See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 197.

credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. (c) But where the evidence supporting his finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances.' "

In the present case the disputed findings are based in part on oral testimony and in part on written evidence. If we examine the documentary evidence and find that it compels the conclusion that credit was extended by plaintiff to Klad-Ezee and that evidence is consistent with the uncontradicted, unimpeached oral testimony, then the trial court's determination should be reversed.

■■■ The written evidence that a loan was made and that the proceeds were deposited to the account of Creative Marketing is uncontradicted. Plaintiff introduced a bank money order with Klad-Ezee as remitter and Creative Marketing as payee. In general terms—

"A 'money order' is a form of credit instrument calling for the payment of money to the named payee which provides for a safe and convenient means of remitting funds by persons not having checking accounts. There are three parties to a money order: the remitter (payor), the payee, and the drawee. Munn, Encyclopedia of Banking and Finance, Bankers Publishing Co. (Garcia ed., 1962)." Bailey, Brady on Bank Checks (4 ed.) § 1.7, p. 11, note 37.[6]

Thus the naming of Klad-Ezee on the instrument as remitter is evidence that the instrument was issued on behalf of Klad-Ezee. The payee named on the instrument was Creative Marketing and the endorsement stamped by Southwest states in part:

"Credit to the account of the within named payee. All prior endorsements guaranteed."

Even if Gilman's testimony is construed most favorably to defendant on this point, he merely had no knowledge of whether the account was in fact credited. There is nothing in the record to contradict the plain meaning of the stamped endorsement.[7]

The guaranty contract itself contains the following language:

"FOR VALUE RECEIVED and *to enable Klad-Ezee, Inc.*, Watertown, Minnesota, hereinafter designated as 'Debtor,' *to obtain credit, from time to time*, of the FIDELITY BANK AND TRUST COMPANY OF MINNEAPOLIS, MINNESOTA * * *." (Italics supplied.)

The language of the guaranty contract clearly states that it is to enable Klad-Ezee to obtain credit. It is not signed in a corporate capacity. The "Contract of Guarantee" is not directly connected to the loan. It is apparently a standard form guaranty which refers to credit to be extended. The evidence of its connection with the money order and the loan ledger is primarily circumstantial, i. e., the same date and amount. The direct evidence linking the three documents is the testimony of Gilman which the trial court had to discount to reach the result which it did.

Finally, the ledger account introduced by plaintiff as a business record, and ultimately without objection, shows an unpaid account balance of $23,000 plus interest. It further shows that a loan was made on January 17, 1972, the same date as the

**6.** Bank money orders are "practically a modified form of cashier's check," and "should be regarded as obligations of the issuing bank." Bailey, Brady on Bank Checks (4 ed.) § 1.7, p. 110.

**7.** Minn.St. 336.4–205(1) provides that a depository bank can supply a missing customer's endorsement as was done in this case. Since defendant produced no evidence to the contrary, it must be presumed that the account of Creative Marketing was credited.

money order was issued and the same date as is found on the guaranty contract. There is nothing in the record to show that the account ledger is a fabrication or is incorrect. However, the foundation laid for the admission of the records was minimal. Gilman testified generally and in conclusory terms to the accuracy of the records and to the fact that he was their custodian.

It is possible the trial court felt that there was minimally adequate foundation for a business record entry, but that the foundation was too weak to persuade the trial court as factfinder.

However, in addition to the business records in the present case, the uncontradicted testimony of Gilman supports the existence of a $23,000 debt on an unpaid loan to Klad-Ezee. Despite a lack of memory for some detail, Gilman was certain that a corporate loan was made and that a corporate note was signed.[8]

■ It has been well settled in Minnesota since *O'Leary v. Wangensteen,* 175 Minn. 368, 221 N.W. 430 (1928), that a trial court or jury cannot disregard the positive testimony of an unimpeached witness without a reasonable ground for doing so; the ground for ignoring such testimony is usually improbability or inconsistency of the testimony, or its inconsistency with other proven facts. 20 Dunnell, Dig. (3 ed. rev.) § 7.11, and cases cited therein. Minnesota follows a majority of jurisdictions. 32A C.J.S., Evidence, § 1038. In its memorandum, the trial court did not state that it discredited Gilman's testimony, but stated that there was *no* evidence of a primary obligation.[9]

Gilman's testimony was consistent with the documentary evidence of the plaintiff. The date on each of the documents and the amount of the purported loan were all the same. The court indeed found that $23,000 was transferred to Southwest for unknown purposes.

■ This is not a situation in which we have held that extra scrutiny must be directed at the testimony of a single witness, as in a will contest. *In re Estate of Sandstrom,* 252 Minn. 46, 89 N.W.2d 19 (1958). The present defendant was alive and presumably capable of testifying to contradict the testimony of Gilman. We find that in the absence of contradicting testimony Gilman's testimony that a loan was made must be believed.

■ The elements of a prima facie case on a contract of guaranty are set out in *Clark v. Otto B. Ashbach & Sons, Inc.,* 241 Minn. 267, 275, 64 N.W.2d 517, 522 (1954), as—

(1) a primary obligation or undertaking,
(2) a collateral undertaking on the part of a guarantor,
(3) the default of the principal obligor.

Where a plaintiff proves a prima facie case and it is unrebutted by defendant, the plaintiff has met his burden of proof. *Elk River Concrete Products Co. v. American Cas. Co.,* 268 Minn. 284, 129 N.W.2d 309 (1964).[10]

We hold that in this case plaintiff has established a prima facie case. The defendant offered no rebuttal testimony of any kind. Moreover, defendant admitted in an affidavit made in opposition to plaintiff's motion for summary judgment that Cre-

---

**8.** In the affidavit of defendant (in opposition to plaintiff's motion for summary judgment) defendant admitted signing a corporate note, but stated that he believed the guaranty was signed in a corporate capacity.

**9.** Had defendant put in any evidence disputing the existence of a loan or contradicting other plaintiff's contentions, the trial court would have to be upheld. As the record stands now, the finding of no credit is apparently based only on gaps in plaintiff's proof.

**10.** See, also, *Bass v. Ring,* 210 Minn. 598, 299 N.W. 679 (1941). This follows from the theory that a prima facie case shifts the burden of proof, in the sense of going forward with the evidence, to the opposing party. *Peterson v. Minneapolis Railway Co.,* 226 Minn. 27, 31 N.W.2d 905 (1948); Dunnell, Dig., §§ 3468 and 3470. Prima facie case has also been used in another sense. A prima facie case is sometimes said to create a question for the factfinder. *Anderson v. Connecticut Fire Insurance Co.,* 231 Minn. 469, 43 N.W.2d 807 (1950); 9 Wigmore, Evidence (3 ed.) § 2494.

ative Marketing loaned Klad-Ezee the sum of $23,000 sometime prior to January 1972. He admitted in the same affidavit that on January 17, 1972, he signed a corporate note on behalf of Klad-Ezee and a Contract of Guarantee with plaintiff bank. However, he stated he signed both documents under a mistaken belief that he was signing in a corporate capacity and not individually.

 We thus have admission on the part of defendant that evidence of defendant's debt to plaintiff was signed. Plaintiff's evidence establishes that the money, even if not received by Klad-Ezee, was paid over to Creative Marketing at the direction of defendant. Finally, defendant in his answer alleged, as a separate defense, failure of consideration and misrepresentation of the facts in inducing defendant to sign certain documents. These defenses are affirmative defenses and defendant must offer evidence to prove them once plaintiff has established a prima facie case in chief. All defendant would have had to do was to testify or present evidence that in fact Klad-Ezee never received any credit for the $23,000 on the loan.

We hold there was sufficient evidence to establish plaintiff's prima facie case that a loan was made, and the trial court's finding that no loan was made was clearly erroneous. Thus the basis for the trial court's ruling must fail.

The case is reversed and remanded with direction to enter judgment for plaintiff, plus interest, costs, and disbursements, and such reasonable attorneys fees as shall be set by the trial court.

OTIS, J., took no part in the consideration or decision of this case.