**Roscoe PALMER, Appellant,**

v.

**PRODUCTION CREDIT ASSOCIATION OF BLOOMING PRAIRIE, Respondent.**

**No. C8–86–1510.**

Court of Appeals of Minnesota.

April 21, 1987.

Henry J. Savelkoul, Christian, Slen, Savelkoul, Broberg & Kohl, Albert Lea, for appellant.

Robert M. Halvorson, Sally Stolen Grossman, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK, and MULALLY *, JJ.

## OPINION

WOZNIAK, Judge.

Roscoe Palmer appeals from the judgment dismissing his action against respondent Production Credit Association (PCA). Palmer had sued PCA seeking specific performance of the unpaid balance due on a contract for deed. In dismissing the action, the trial court found no evidence which showed that PCA had ever made a direct representation to assume liability of the contract for deed. We affirm.

## FACTS

In May 1979, when land values were high, Palmer sold 440 acres of farmland to Diane Minear for $792,000 on a contract for deed. Approximately fifteen months later, Minear and her husband mortgaged their interest in the land to PCA, which is a cooperative lending institution. The mortgage expressly reserved to PCA the discretionary right to "pay or otherwise remedy" any of Minear's defaults under the contract for deed.

Payments on the contract were due on the first day of April, August, and December of each year. Minear made payments in 1980, but missed the April 1981 payment, at which time Palmer served both Minear

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

and PCA with a notice of cancellation. By missing the payment, Minears defaulted on the mortgage to PCA. PCA did not foreclose the mortgage; but, exercising its discretionary right under the mortgage, it cured the delinquency by making the contract payment to Palmer.

Palmer continued to receive contract payments from PCA in August and December of 1981, but did not receive a payment for April 1982, when he again served Minear and PCA with a notice of cancellation. In the middle of April, Palmer received a call from Warren Iverson, president of PCA. At trial, Palmer testified to the following conversation with Iverson:

Mr. Iverson called me, and he said that they had made an agreement with the Minears, and he says when the papers are signed, you will have your check, in full, and from then on you'll have your checks on time. Then he gave a little chuckle, and he says, "How's that sound?". And I said, "Fine."

Palmer also said that he would stop the cancellation when he received payment.

Meanwhile, on April 13, 1982, the Minears conveyed their interest in the land to PCA by quit claim deed. The deed contained a clause which stated in effect that the quit claim deed did not merge with the contract for deed.

PCA made the April 1982 payment, and continued to make payments through April 1983. Shortly before the August 1983 payment was due, however, Palmer received a letter from PCA requesting a conference. Palmer and his attorney then met with Iverson, who wanted to renegotiate the terms of the contract to defer the principal on the August payment. Iverson said PCA would pay the interest and the taxes and would try to sell the land before another payment came due. After discussing this proposal with his attorney, Palmer agreed to the plan and agreed not to start another contract cancellation.

Both Palmer and his attorney considered PCA liable for the contract because of the quit claim deed from the Minears and PCA's past payments. Palmer's attorney testified, however, that at the August 1983 meeting PCA took the position that it was not obligated under the contract for deed. Palmer's attorney admitted that he never prepared a contract or an agreement for Palmer and PCA to sign.

PCA made the interest and taxes payment due in August 1983, but failed either to sell the land or to make the December 1983 payment. Palmer then met with Iverson on December 10, 1983. Palmer testified that Iverson agreed to pay off the contract at a discounted rate for between $500,000 and $550,000. This agreement was not reduced to writing. Palmer admitted at trial that he could have started contract cancellation at any time, but chose not to because he assumed PCA was liable for the contract. Shortly after their meeting, Iverson told Palmer that PCA could not buy the land.

By the spring of 1984, land values had dropped considerably. Palmer sued PCA for specific performance of the contract for deed, which at the time of trial had an unpaid balance of approximately $742,000. At trial, Palmer conceded that PCA had signed nothing promising to make the payments. Neither had the Minears shown him any documents stating PCA would make the payments. No contract or assignment or assumption agreement between Palmer and PCA was ever drafted.

After Palmer presented his evidence, PCA moved for a "directed verdict of dismissal" on the grounds that Palmer's evidence failed to establish a claim for relief. The court granted the motion and later issued its findings of fact and conclusions of law, concluding (1) that Palmer's evidence of PCA's promises was "ambiguous at best"; (2) that PCA was not estopped from denying an assumption of the contract because it had made no verbal representations to do so and because Palmer had not relied to his detriment upon any of PCA's statements; and (3) that any concessions Palmer made in August 1983 were made with the knowledge that PCA considered itself under no obligation to make the contract payments and that the August 1983 agreement was not an assumption by PCA of the contract for deed.

## ISSUE

Does the evidence justify the trial court's findings and conclusions regarding an alleged oral agreement between Palmer and PCA?

## ANALYSIS

Initially, we commend the trial court for its detailed findings, which are required whenever a trial court renders judgment on the merits against a plaintiff pursuant to a motion to dismiss. Minn.R.Civ.P. 41.02(2). On appeal, we may not set aside the trial court's findings unless they are clearly erroneous. *Fidelity Bank & Trust Co. v. Fitzimons,* 261 N.W.2d 586, 588 (Minn. 1977). A finding is clearly erroneous if

" * * * 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "

*Id.* (quoting *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972)). Due regard must also be given to the trial court's opportunity to observe the witnesses and assess their credibility. *Id.*

After listening to Palmer present his case, the trial court concluded that the evidence of an agreement between Palmer and PCA was ambiguous. Palmer challenges the court's conclusion, claiming the evidence shows that in April 1982 an oral agreement between Palmer and PCA was created wherein PCA agreed to make the payments on Minear's contract for deed. At trial, however, Palmer testified only that Iverson called him and said that PCA had made an agreement with the Minears and indicated that when the papers were signed, Palmer would be paid in full and from then on would have his checks on time. Palmer never claimed that Iverson specifically told him that PCA would make the payments. In fact, Palmer later admitted that *he* intended the agreement to be that PCA would make the payments.

Contract formation, however, is not based on the subjective intent of a party, but is governed by an objective standard. *See North Star Center, Inc. v. Sibley Bowl, Inc.,* 295 Minn. 424, 426, 205 N.W.2d 331, 332 (1973). Here, no written agreement obligates the PCA to make the contract payments. Although Palmer repeatedly refers to the oral agreement that was made during the April 1982 conversation with Iverson, the evidence clearly shows that Iverson never committed PCA to making the contract payments. Although Palmer intended an agreement, the record is devoid of any such agreement.

The trial court's findings are consistent with Palmer's testimony. Indeed, we believe that the trial court is generous in concluding that Palmer's evidence is ambiguous. As the court noted in ruling on the motion to dismiss, there was not even a whisper of evidence that PCA had ever made a direct representation to Palmer that it would assume the liability imposed on the contract purchaser. Upon reviewing the entire record, we believe Palmer's evidence falls far short of establishing his claim of an oral agreement. The trial court's findings and conclusions concerning the alleged agreement are not clearly erroneous.

Although Palmer raises other issues on appeal, they are premised on the existence of an oral agreement, and we need not address them. The judgment of the trial court is affirmed.

## DECISION

Affirmed.