Osgood Company, Respondent, vs. Peterson Construction Company and another, Defendants: Seaboard Surety Company, Appellant.

*May 10—June 6, 1939.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *R. J. Sutherland* and *Tim F. Harrington, Jr.,* all of Madison.

For the respondent there was a brief by *Sanborn, Blake & Aberg* and *Edwin C. Conrad,* all of Madison, and oral argument by *Mr. W. J. P. Aberg* and *Mr. Conrad.*

WICKHEM, J. The only issue involved in this case is whether the complaint states a cause of action under sec. 289.16 (1) and 289.53 (1), Stats. Defendant contends that the lien sought to be asserted is for the purchase price of machinery sold to a contractor as part of his equipment, and that the statutes in their present form do not give a lien for the purchase price of such machinery. The question raised is not without difficulty, and at the outset may best be met by considering the relevant statutory developments.

In 1929, sec. 289.16 (1), Stats., required that every public contract contain a provision for the payment by the contractor "of all claims for such work and labor performed and materials furnished," and further required that every contractor "shall give a good and sufficient bond, the penalty of which shall not be less than the contract price, conditioned for the faithful performance of the contract, and the payment to each and every person or party entitled thereto of all the claims for work or labor performed, and materials furnished for or in or about or under such contract." Sec. 289.53 (1), Stats., as in force in 1929 provided that "any person, firm or corporation furnishing any material, apparatus, fixtures, machinery or labor to any contractor for

public improvements in this state, except in cities of the first class, however organized, shall have a lien on the money, or bonds, or warrants due or to become due such contractor for such improvements." This lien was contingent upon a service of a notice of claim upon the public authorities. By ch. 348, Laws of 1931, both sections were amended by providing that a claim for workmen's compensation insurance premiums could be included as a lienable item. Ch. 83, Laws of 1933, amended sec. 289.16 (1), Stats., by adding following the words "materials furnished" the words "to be used or consumed in making such public improvement or performing such public work, including without limitation because of specific enumeration fuel, lumber, building materials, gasoline and other motor oil, lubricating oil, and greases." Ch. 316, Laws of 1933, added, "machinery, vehicles, tractors, equipment, fixtures, apparatus, tools, appliances, supplies, electric energy" to the enumeration of items in ch. 83, Laws of 1933. This latter act puts sec. 289.16 (1) and sec. 289.53 (1) into their present form. It is now provided in sec. 289.16, Stats., that the contract must provide for the payment "of all claims for labor performed and materials furnished, used or consumed in making such public improvement . . . including, without limitation because of specific enumeration, fuel, lumber, building materials, machinery," etc. Sec. 289.53 (1), Stats., now provides that any person, firm, or corporation furnishing any materials to be used or consumed in making such public improvement or performing such public work "including without limitation because of specific enumeration fuel, lumber, building materials," etc., shall have a lien upon funds due to the contractor if appropriate notices are given. Having in mind that the question is whether the term "materials furnished, used, or consumed" includes the purchase price of equipment, it is obvious that the words are at least open to a reasonable contention that standing alone and without giving any con-

sideration to precedent authority, what is meant is, (1) materials that are incorporated into the project, such as concrete in the case of a highway, (2) materials which are consumed in making forms or producing energy for the operations, such as lumber and oil, and (3) the rental value or depreciation upon the job of machinery that is used but not used up in the project. It will be necessary therefore to examine the decisions of this court to see what the legislature was aiming at in the amendments following 1929.

In *Wisconsin Brick Co. v. National Surety Co.* (1917) 164 Wis. 585, 160 N. W. 1044, it was held that a common carrier was not entitled to a mechanic's lien for freight charges or materials used in the project. In *Webb v. Freng* (1923), 181 Wis. 39, 194 N. W. 155, it was held that appliances, tools, and equipment which might be used again were not lienable materials. In *Southern Surety Co. v. Metropolitan S. Comm.* (1925) 187 Wis. 206, 201 N. W. 980, 204 N. W. 476, the court had under consideration the question whether under statutes allowing a lien for work, labor, and furnishing of materials there could be any lien for coal, gas, and oil consumed in connection with the job, cars, and picks, rental for hoists and concrete mixer, the boiler used in construction of a sewer, and premiums for compensation insurance. The court held that none of these items were lienable. This was followed in *Southern Surety Co. v. Hotchkiss* (1925), 187 Wis. 227, 201 N. W. 986, which excluded as lienable harness accessories and repairing; blacksmith services for repairing tools and outfits; veterinary services; feed, oats, bran, and hay; food furnished to workmen; oil and gas; road scrapers; and tools, hammers, and supplies. In *Fidelity & D. Co. v. Milwaukee-Western F. Co.* (1927) 191 Wis. 499, 210 N. W. 713, and *Employers Mut. L. Ins. Co. v. Ferd. H. Grahl C. Co.* (1931) 203 Wis. 315, 234 N. W. 326, it was again held that premiums for workmen's compensation insurance were nonlienable. *Muller*

*v. S. J. Groves &, Sons Co.* (1931) 203 Wis. 203, 233 N. W. 88, held that the rental value of machinery in and about a public building was not a lienable item. To the same effect as to the rental of a truck, see *White v. United States F. & G. Co.* (1934) 216 Wis. 173, 256 N. W. 694. All of these cases were prior to the amendments of 1933 and indicate what the legislature might have been seeking to accomplish by these amendments. It is apparent that the legislature meant to extend lienable items beyond the list approved by the court. This was recognized in *Morris F. Fox & Co. v. State* (1938), 229 Wis. 44, 281 N. W. 666, in which the court stated that it was evident that the purpose of the legislature in the 1933 amendments "was to enlarge the class of lienable claims," and in *Harnischfeger Sales Corp. v. Kehrein Bros.* (1938) 229 Wis. 225, 229, 281 N. W. 918, in which this court said:

"Prior to 1933, sec. 289.16, Stats., contained no provisions for payment by the contractor of machinery, vehicles, etc. Accordingly, in several cases this court denied recovery for various charges then omitted from the statute. . . . Thereafter followed the legislative expansion of sec. 289.16.
. . .

"The surety under the terms of the statute is required to guarantee payment for materials furnished in or about or under such contract, including machinery and equipment."

Neither decision deals with the scope of the extension. In the *Harnischfeger Case* the plaintiff sought a recovery upon the theory that the rental value of the machinery was included within the statute. In that case the machinery had been bought some years before as a part of the contractor's general equipment and was not furnished for use upon the particular job involved in that case. This was the ground upon which the court denied a lien. It is our conclusion, from the wording of the statute as well as the precedent development of the subject by this court, that the legislature had in mind that machinery, fuel, lumber, and other items

which were actually used up in whole or in part in making the improvement were to constitute lienable items although not actually incorporated in the improvement. It will be noticed that instead of simply making fuel, lumber, machinery, etc., that are used in or about the job lienable on the same basis as materials furnished, the statute includes them within the definition of materials furnished, and the only materials for which a lien is to be given are those used or consumed in making such a public improvement. Defendants contend that the word "used" means "used up," while plaintiff asserts that it means "employed" and that a lien exists if machinery is either employed or consumed. We conclude that defendants' contention is sound, and that the terms "used" and "consumed" were intended to be synonymous. The word "use," in relation to materials, has by common usage been considered to refer to their incorporation into a project or their consumption in the process. It is not so clear that this is true of machinery. The general usage would be more apt to ascribe to the word "use" the meaning of employ in relation to machinery. When it is considered, however, that by the peculiar wording of the statute machinery is included within the term "materials," the term "use" is to be taken in the sense which usage gives it with respect to materials. This means used up or consumed. When a piece of machinery is employed upon a project, it is only used in the sense and to the extent that a portion of its useful life is contributed to and exhausted by the project, and the value of this is the lienable item. In addition to this, as held in the *Harnischfeger Case, supra,* it must be furnished for employment or use upon the very job out of which have come the funds against which a lien is claimed. Having been so furnished, a lien to the extent indicated exists, and the surety's liability and the contractor's promise to pay relate to this amount. Since in the case of other materials the value of this use includes profit or rea-

sonable return, and not mere depreciation, we conclude that the reasonable rental or use value is the measure of the lien.

This conforms to the legislative and judicial history of this subject. The various amendments evidently were aimed at nullifying conclusions of the court that materials had to be incorporated into the job in order to constitute lienable items. The legislative purpose was to include items, including machinery, which were used up or consumed on the job, although not incorporated therein. As pointed out by the trial court in a well-considered opinion, this seems to be a common-sense conclusion. If a road contractor should purchase on credit expensive road equipment, the immediate use of which would be upon the job in question, the value or price of this equipment might be greater than any funds that he would have coming to him upon the job, while the equipment might be useful and available for numerous other projects. We cannot believe that the legislature intended by the amendments heretofore noted to protect the manufacturers of such equipment to any greater extent than its use value on the job for which it is furnished, for the result would be to exclude other creditors until the machinery was fully paid for.

Up to this point our views accord with those of the trial court. The trial court, however, was of the opinion that the complaint did not disclose the fact that plaintiff was seeking a lien for the entire purchase price of machinery which was not in whole or in part used or consumed for the public improvement out of which the funds sought to be impressed with a lien arose. In consequence, the trial court overruled the demurrer upon the ground that the defect asserted did not appear upon the face of the complaint. While the matter is not free from doubt, we conclude that this was error. The allegation is that the—

"Plaintiff furnished the said Peterson Construction Company the following highway materials used in the construction and improvement of the highway above mentioned."

There follows the allegation that the purchase price of this equipment was $1,034, which the Peterson Company agreed to pay. A detailed description of the equipment is attached to the complaint of which the following is a fair sample:

"1—45' Dragline Boom with foot castings 4782, Paint Sheave 4923. Two guide rollers, boom hoist sheaves 4659, & tag line track."

Obviously, the description is of such nature that this court cannot take judicial notice as to the character of the machinery, although the allegation might be open to the inference that it is not such machinery as would be exhausted or used up in the project at hand. However, we think a liberal construction of the complaint would not disclose an allegation that these materials were completely consumed in the construction of the highway. If they were not, the complaint does not disclose any basis for a lien to the full amount of the purchase price, which is expressly demanded, nor are there any allegations as to the reasonable use value of the machinery upon this job. We consider that it was plaintiff's duty to allege facts showing that it was entitled to a lien and that this duty could only be discharged by alleging the reasonable use value of which the purchase price would be some evidence only if the equipment was wholly consumed on the job. Since this was plaintiff's burden and it was not discharged, we conclude that the demurrer to the complaint should have been sustained.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer and for further proceedings according to law.