INDEPENDENT SCHOOL DISTRICT NO. 24 v. OREN M. WEINMANN, *d.b.a.* WEINMANN PLUMBING & HEATING COMPANY, AND ANOTHER. ST. PAUL-MERCURY INDEMNITY COMPANY, APPELLANT-RESPONDENT.[1]

January 21, 1955.

Nos. 36,389, 36,392.

[1]Reported in 68 N. W. (2d) 248.

Geo. N. *Guttmann* and *Justin D. Halpern,* for respondent-appellant Weinmann.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *David W. Nord,* for appellant-respondent St. Paul-Mercury Indemnity Company.

*Byron W. McCullagh,* for respondent Independent School District No. 24.

CHRISTIANSON, JUSTICE.

Action was brought by plaintiff, as obligee, on a contractor's bid bond executed by defendants, Oren M. Weinmann, as principal, and St. Paul-Mercury Indemnity Company, as surety. Plaintiff's initial motion to strike defendants' answers as sham and frivolous was denied by the court. Thereafter plaintiff moved for summary judgment against both defendants and its motion was granted. Defendant St. Paul-Mercury Indemnity Company, hereinafter referred to as Mercury, then amended its answer to cross claim against defendant Weinmann for indemnification for all sums adjudged against Mercury, as surety, in favor of plaintiff plus its attorneys' fees. Defendant Weinmann denied liability on the cross claim and counterclaimed against Mercury for all sums adjudged against him in

favor of plaintiff. The issues thus drawn between the defendants were tried before the court without a jury. Defendants separately appeal from the judgment entered in favor of plaintiff for $6,732.50 pursuant to the order granting plaintiff summary judgment against each of them. Defendant Weinmann also appeals from the judgment entered for Mercury on its cross claim entitling Mercury to judgment against Weinmann for such amounts as Mercury pays to satisfy the judgment in plaintiff's favor and the reasonable value of its attorneys' fees in defending said action.

On November 20, 1950, plaintiff advertised by published notice for bids on the installation of heating, ventilation, and plumbing in the construction of a new school to be known as Adair Avenue Elementary School. The advertisement specified that all bidders were required to accompany their bids with bid bonds guaranteeing that the bidder would enter the contract if awarded to him and to furnish a performance bond pursuant to M. S. A. 125.18.[2] Weinmann submitted a bid for $134,650 on January 4, 1951, which was accompanied by a bid bond written by defendant Mercury through the Cobb-Strecker-Griswold Agency of Minneapolis, general agents for Mercury, hereinafter called the Agency. In addition to establishing the surety obligation, the bond provided:

"The Condition of the Above Obligation Is Such that, if the said principal shall be awarded the contract, and shall within—the time specified—after receiving notice of such award enter into a contract and give bond for the faithful performance of the contract, then this obligation shall be null and void, otherwise the principal and surety will pay unto the obligee the difference in money between the amount of the principal's bid and the amount for which the obligee may legally contract with another party to perform the work, if the latter

[2]M. S. A. 125.18, subd. 2, provides: "Every such contract shall be awarded to the lowest responsible bidder, duly executed in writing, and the person to whom the same is awarded shall give a sufficient bond to the board for its faithful performance, and otherwise conditioned as required by sections 574.26, 574.28, 574.29, and 574.30. If no satisfactory bid is received, the board may readvertise."

amount be in excess of the former; in no event shall the surety's liability exceed the penal sum hereof."

The penal sum of the bond was five percent of the total amount of the bid, or $6,732.50.

The bid bond had been issued by the Agency following Weinmann's urgent telephone request on January 4, 1951, in which he asserted that he must have the bond that day; that his financial status had not changed from that shown on a financial statement furnished the Agency six months before; that he had no other work in progress at the time; and that his bid would not exceed $100,000. Relying on Weinmann's statements, Richard Dunphy, an officer of the Agency, wrote the bid bond and personally delivered it to Weinmann. On the night of January 4, 1951, the bids on the contract were opened and Weinmann's bid was $13,850 lower than the next lowest bidder, Harris Brothers Plumbing & Heating Company. Dunphy testified that this was the first time he knew the amount of Weinmann's bid and that the difference of $13,850 made him suspicious of its soundness. The next day, Dunphy requested that Weinmann submit a new financial statement to the Agency and was assured that the statement was being prepared. Between January 4 and January 8 the Agency investigated Weinmann's business situation and found that, contrary to Weinmann's assertions, his financial status had drastically deteriorated in the last six months; that he could not even obtain credit from his bank; and that he had other work in progress. On January 8, the contract was officially awarded Weinmann and upon further inquiry by Dunphy concerning the requested financial statement, Weinmann stated that he had made other arrangements with respect to the performance bond. However, as of February 9, 1951, Weinmann had not furnished a performance bond to the plaintiff, and the school district rejected his bid and awarded the contract to the Harris Brothers Plumbing & Heating Company as the next lowest bidder for the sum of $148,500.

■ Defendants assert that the district court erred in granting plaintiff's motion for summary judgment because defendants' answers raised a genuine issue as to the material fact of a unilateral

mistake on the part of Weinmann which if proved would entitle him to the equitable relief of rescission of his preliminary contract to furnish a performance bond and accept the main contract. The claimed unilateral mistake is Weinmann's reliance upon the alleged representation by Mercury that it would furnish a performance bond. The situation presented here is clearly distinguishable from that of a contractor who through an excusable mistake as to a material fact erroneously computes the amount of his bid thereby establishing the lowest price bid for a contemplated construction contract and preventing a "meeting of the minds" between the parties.[3] Equitable relief in the form of contract rescission cannot be granted merely because of Weinmann's breach of his preliminary bid bond contract,[4] which resulted from a mere unilateral subjective misapprehension on his part regarding his contractual relations with a third party[5] and not the substance of the contract, if any degree of stability in the field of contractors' bids is to be preserved. Furthermore, in view of the finding of the trial court, hereinafter considered, that Weinmann did not submit his bid and proposal in reliance upon representations, conduct, or agreement with Mercury, the allegations in Weinmann's answer to the contrary and that plaintiff knew or had reason to know of such representations are moot and need not be considered even though it should be conceded that a genuine issue of a material fact between plaintiff and Weinmann was raised thereby. See, Restatement, Contracts, § 477; cf. Neefus v. Neefus, 209 Minn. 495, 296 N. W. 579.

■ Defendants also contend that plaintiff suffered no damage because of Weinmann's breach of the bid bond contract and his

[3]St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741; Barlow v. Jones (N. J.) 87 A. 649; see, Olson v. Shephard, 165 Minn. 433, 436, 206 N. W. 711, 712; see, also, Annotation, 59 A. L. R. 809, 827 to 830.

[4]Federal Contracting Co. v. City of St. Paul, 177 Minn. 329, 225 N. W. 149.

[5]Cf. Palo & Dodini v. City of Oakland, 79 Cal. App. (2d) 739, 180 P. (2d) 764; Krulewitch v. National Importing & Trading Co. Inc. 195 App. Div. 544, 186 N. Y. S. 838 (mutual mistake).

failure to provide a performance bond. In Barber Asphalt Paving Co. v. City of St. Paul, 136 Minn. 396, 399, 162 N. W. 470, 472, L. R. A. 1917E, 370, this court recognized the existence of damages where an accepted bid has not been carried out as guaranteed by saying:

"* * * the actual loss is ordinarily accurately and readily fixed by the difference in price of the accepted bid and that of the next lowest responsible bidder."[6]

Thus, the $13,850 difference between Weinmann's bid of $134,650 and the higher accepted bid of $148,500 constituted plaintiff's actual damages which are limited to $6,732.50 when suit is brought upon the bond against the surety. Since the bid bond was required by plaintiff to secure indemnity against losses resulting from having to accept the next lowest responsible bid,[7] the judicial policy against penalties does not apply. See, 10 McQuillin, Municipal Corporations (3 ed.) § 29.66.

We therefore conclude that the district court's order granting plaintiff summary judgment was not prejudicial to either of the defendants under the circumstances presented and that even if error in this respect be assumed, no ground for reversal of the judgment in favor of plaintiff is presented.

■ Defendant Weinmann further contends that the trial court's findings of fact on his counterclaim in answer to Mercury's cross claim are not sustained by the evidence. The trial court found that Weinmann did not submit his bid and proposal in reliance upon representations, conduct, or agreement with Mercury and that he therefore had not shown any right of recovery on his counterclaim. Weinmann's own testimony establishes that no serious discussion concerning the furnishing of a performance bond took place until January 4, 1951, *after* the submission and opening of the bids. Weinmann's subjective belief that the surety writing the bid bond

[6]See, United States v. Conti (1 Cir.) 119 F. (2d) 652; cf. Wheaton Bldg. & Lbr. Co. v. City of Boston, 204 Mass. 218, 90 N. E. 598.

[7]See, Barber Asphalt Paving Co. v. City of St. Paul, 136 Minn. 396, 399, 162 N. W. 470, 471, L. R. A. 1917E, 370.

would also write the performance bond does not necessarily bind Mercury, especially in view of the two past noncommittal transactions between the parties and Weinmann's understanding that he had to fulfill certain requirements before the performance bond would be written.[8] Thus, we find that the trial court's findings of fact are substantially supported by the evidence and easily satisfy the standard of not being manifestly or palpably contrary to the evidence. Reiter v. Western State Bank, 240 Minn. 484, 488, 62 N. W. (2d) 344, 346-347. Furthermore, the trial court correctly ordered judgment for Mercury on its cross claim for indemnity against Weinmann, its principal, for such amount as it is required to pay as surety on the bid bond since an indemnification agreement is implied upon creation of the surety contract. Hartford Acc. & Ind. Co. v. Dahl, 202 Minn. 410, 278 N. W. 591. Likewise, Mercury was entitled to recover the reasonable value of the attorneys' fees it incurred in an unsuccessful defense on the bond. United States F. & G. Co. v. Falk, 214 Minn. 138, 7 N. W. (2d) 398.

■ Defendant Weinmann assigns as error the action of the trial court in sustaining Mercury's objection to two offers of proof as being immaterial and without foundation. The offers attempted to establish Weinmann's reliance upon representations by Mercury and the loss of profit he sustained due to his inability to go ahead with the main contract. Objections to the respective offers were sustained on the ground that the evidence did not disclose that Mercury had ever made any representations to Weinmann. The exclusion of evidence for immateriality or lack of foundation rests largely in the discretion of the trial court. Erickson v. Northern Minnesota Nat. Bank, 235 Minn. 232, 50 N. W. (2d) 489; 7 Dunnell, Dig. (3 ed.) §§ 3241 and 3244. Moreover, evidence which is material and competent only on proof of other facts may be excluded unless such other facts are proved or offered to be proved. Follansbee v. Johnson, 28

---

[8]Previously Weinmann had secured one bid bond without a performance bond and another performance bond without a bid bond from Mercury. Furthermore, Weinmann knew he had to furnish a current financial statement but he failed to do so.

Minn. 311, 9 N. W. 882. We find no abuse of discretion with respect to the offered testimony.

Judgment affirmed.

[1]Reported in 68 N. W. (2d) 245.