169 N.W.2d 50 (1969)
HEALY PLUMBING AND HEATING COMPANY, Appellant,
v.
MINNEAPOLIS-SAINT PAUL SANITARY DISTRICT et al., Respondents.
No. 41513.
Supreme Court of Minnesota.
June 13, 1969.
*51 Maun, Hazel, Green, Hayes, Simon & Aretz, and James W. Brehl, St. Paul, for appellant.
Thomas, King, Swenson & Collatz, St. Paul, for Travelers Ind. Co.
Briggs & Morgan, St. Paul, for Steenberg Const. Co.
Carlsen, Greiner & Law, Minneapolis, for Watson Const. Co. and Planet Ins. Co.
Faricy & Green, St. Paul, for Minneapolis-St. Paul Sanitary Dist.
Carroll, Cronan, Roth & Austin, Minneapolis, for Toltz, King, Duvall, Anderson & Assoc.

OPINION
KNUTSON, Chief Justice.
This is an appeal by plaintiff, Healy Plumbing and Heating Company (hereinafter Healy), from the judgment entered pursuant to an order of the district court granting the motion of defendant Travelers Indemnity Company (hereinafter Travelers) for summary judgment.
The Minneapolis-St. Paul Sanitary District was created and exists under and by virtue of Minn.St. c. 445. Section 445.15 provides in part:
"Bonds shall be required from contractors for any works of construction as provided in and subject to all the provisions of sections 574.26 to 574.31."
Section 574.26, so far as material, reads:
"No contract with the state, or with any municipal corporation or other public board or body thereof, for the doing of any public work, shall be valid for any purpose, unless the contractor shall give bond to the state or other body contracted with, for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials or insurance premiums or equipment or supplies for any camp maintained for the feeding or keeping of men and animals engaged under, or for the purpose of, such contract, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill, materials, insurance premiums, equipment, and supplies for the completion of the contract in accordance with its terms, for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work specified, and for the enforcing of the terms of the bond if action is brought on the bond, including reasonable attorney's fees, in any case where such action is successfully maintained and for the compliance with the laws appertaining thereto."
In 1964 the Sanitary District let three contracts for the expansion of the St. Paul Sewage Treatment Plant. Defendant Steenberg Construction Company, Inc., (hereinafter Steenberg) contracted to construct settling tanks and related structures adjacent to a new compressor building which was to be built under contract let to defendant Watson Construction Company, Inc., (hereinafter Watson). Healy was to do the mechanical work in the compressor building. Each contract was a separate agreement between the contractor and the Sanitary District. The contracts provided that the contractors should furnish workmen's compensation insurance, comprehensive public liability and property damage insurance, and a bond pursuant to §§ 574.26 to 574.31. Travelers was the surety on the bond furnished by Steenberg pursuant to these statutory provisions. Among other things, the bond provides that it is executed for the use of the Sanitary District "and the use of all persons and corporations doing work or furnishing skill, tools, machinery, materials, insurance premiums, equipment or supplies for the purpose of the Contract hereinafter mentioned, its heirs, executors, administrators, successors or assigns." In the conditions of the obligation we find a statement that *52 the bond is issued pursuant to the contract entered into with Steenberg
"* * * and in accordance with the provisions of Section 360.122 [sicall parties agree this should have been § 455.15] and 574.26, Minnesota Statutes 1953, * * * for the use of said Minneapolis-Saint Paul Sanitary District and all others mentioned in said Section 574.26, conditioned as by said statute and as herein required.
"NOW THEREFORE, if the principal shall faithfully fulfill and perform said contract * * * and if said principal shall pay as they become due all just claims for such work, tools, machinery, skill, materials, bond and insurance premiums, equipment and supplies required to be paid by the principal for the completion of said contract in accordance with its terms, * * * and save the Sanitary District and said Cities harmless therefrom and shall perform and indemnify in all particulars as said Contract and the Specifications made a part thereof shall prescribe, and shall comply with all laws and ordinances, orders and decrees appertaining to any of said matters then this obligation shall be void; but otherwise it shall remain in full force and effect."
During the progress of the work the Mississippi River overflowed its banks and caused damage to the work being done by Healy and delay in the completion thereof. Healy brought this action against the Sanitary District, the architects, Watson, Steenberg, Travelers as surety on Steenberg's bond, and Planet Insurance Company as surety on Watson's bond to recover the expenses incurred in preparing for the 1965 flood; the cost of repairing the damage to its works and equipment; and damages due to delay and interference with the performance of the Healy contract, on the theory that it was Steenberg's duty to protect the work from the rising waters of the river. In its complaint, Healy based its claim on two counts: First, it alleged that Steenberg and Watson were required by their contracts with the Sanitary District to protect their work and that of others adjacent to them, including that of Healy, from damages due to the rising river water; and second, it alleged negligent failure on the part of Steenberg and Watson to provide such protection.
The parties entered into a stipulation which reads:
"IT IS HEREBY STIPULATED AND AGREED, by and between the above-named plaintiff and defendant Travelers Indemnity Company, through their respective attorneys, that for the purposes of a trial of this case and in the consideration by the Court of any pretrial motions or proceedings, the following facts are true:
"A. That the plaintiff furnished no labor or materials to defendant Steenberg Construction Company, Inc. for use in the doing of work or furnishing of materials described in the technical provisions and drawings of the plans and specifications applicable to the contract of the defendant Steenberg Construction Company, Inc. with defendant Minneapolis-St. Paul Sanitary District, No. 636, referred to in Paragraph II of the Complaint, provided that plaintiff expressly reserves its position that defendant Steneberg [sic] was obliged under its said contract to protect its work and the property and work adjacent thereto and was responsible for damage to the property and work of plaintiff due to the flooding of defendant Steenberg's work and Steenberg's failure to furnish said protection.
"B. That the claims asserted in the Complaint against defendant Steenberg Construction Company, Inc. and defendant Travelers Indemnity Company are for labor and materials performed and furnished by plaintiff in the protection of its own contract work and site prior to the impending flood referred to in the *53 Complaint, and in the repair of the damage to its contract work and site after said flood."
Based on this stipulation and upon an affidavit of Steenberg's president to the effect that it had taken out the insurance required by the contract and that Healy had furnished no materials, tools, equipment, work, or labor in the performance of Steenberg's contract, together with a deposition of an officer of Healy, the court granted summary judgment in favor of Travelers against Healy.
These two issues are presented on this appeal: Whether Travelers is liable to Healy for the alleged breach of Steenberg's contract; and whether summary judgment was proper.
If Healy has no cause of action under the bond, it follows that summary judgment should have been granted.
At the outset, it should be kept in mind that this appeal does not involve the right of Healy to recover from Steenberg or Watson for failure to protect its work from flood water, but involves only Healy's right to recover from Travelers as surety on the bond given pursuant to § 574.26. It is axiomatic that Travelers' liability is limited to the obligation it assumed under its bond. The case of La Mourea v. Rhude, 209 Minn. 53, 295 N.W. 304, relied upon by Healy, is of no help to it for the reason that that action was brought against a contractor, not against the surety on a bond given under our statute. Similarly, Michaud v. Erickson, 108 Minn. 356, 122 N.W. 324, and Northern Nat. Bank v. Northern Minn. Nat. Bank, 244 Minn. 202, 70 N.W.2d 118, do not involve the liability of the surety on a bond required by § 574.26. The Michaud case involved the right of third persons to recover under a performance bond which contained a provision that the contractor (108 Minn. 359, 122 N.W. 325) "should fully and faithfully perform the said contract with Read, which is described in the bond, within the time and according to the terms which were prescribed, and to pay as they became due all just claims for labor performed and materials furnished in the execution of the contract, and save the said William C. Read harmless from all costs, charges, and expenses that may accrue on the doing of the work specified in the contract." In the Northern National Bank case, intervening creditors of the contractor sought to establish their right to receive a payment made under the contract as third-party creditor-beneficiaries.
Section 574.26 had its origin in L.1895, c. 354. Prior to the enactment of that act we held, in Breen v. Kelly, 45 Minn. 352, 47 N.W. 1067, that a county was powerless to take a bond for the security or benefit of a third person in the absence of express legislative authority, and that any bond so taken would be void. We followed the Breen case in Park Brothers & Co. v. Sykes, 67 Minn. 153, 69 N.W. 712 (1897). While the Park Brothers case was decided in 1897, after enactment of L. 1895, c. 354, the bond and contract were executed prior to the enactment of the statute.[1]
It is quite likely that L.1895, c. 354, was enacted by the legislature to overcome the result reached in the Breen case, so that those who have contributed to the performance of the contract might have protection. However, we have consistently held that a bond given pursuant to this statutory provision must be read with the statute and that its scope is limited by the statute. In Fairmont Cement Stone Mfg. Co. v. Davison, 122 Minn. 504, 509, 142 N.W. 899, 901, which involved the construction of a judicial ditch, we said:
"* * * [H]ere the surety executed a bond under the statute for the purpose of complying with the statute, and which contains the exact condition prescribed by the statute. His obligation is measured *54 by the bond in connection with the statute. It cannot be extended beyond the terms of the bond, but the provisions inserted therein in obedience to the statute cannot be rendered nugatory by superfluous provisions not required by the statute, unless that result necessarily follows from the language of the bond."
In Fay v. Bankers Surety Co., 125 Minn. 211, 214, 146 N.W. 359, 360, Ann.Cas. 1915C, 688, 689, we said:
"* * * And while the rule of strict construction in favor of the surety does not apply to a surety company * * *, the surety is bound in the manner and to the extent of his obligation and no further; but the bond, being given by virtue of statute, cannot be severed therefrom, and the parties are deemed to have contracted with reference thereto."
In Ceco Steel Products Corp. v. Tapager, 208 Minn. 367, 370, 294 N.W. 210, 212, we summarized the purpose and scope of the statute in the following language:
"The purpose of the statute * * * is to protect laborers and materialmen who perform labor or furnish material for the execution of a public work to which the mechanic's lien statute does not apply. The bond required and given by the act `stands as security for the payment of all obligations incurred by the contractor in the prosecution of the work, and the general rules and principles of the law of suretyship apply to and govern the rights of the parties.' Wilcox Lbr. Co. v. School Dist. No. 268, 103 Minn. 43, 45, 114 N.W. 262, 263. Obviously, the surety is bound in the manner and to the extent of his obligation and no further. As such a bond is given because the statute requires it, it cannot be severed therefrom, `and the parties are deemed to have contracted with reference thereto. Such an instrument "must be construed in the light of the statute, and extended, as well as limited in its scope, to those cases contemplated by the statute, unless violence would be done to the language of the bond by such construction."' Fay v. Bankers Surety Co., 125 Minn. 211, 214, 146 N.W. 359, 360, Ann.Cas.1915C, 688."
There are many similarities between the language of our mechanics lien law and the language of §§ 574.26 to 574.31. We have frequently held that only those mentioned in the mechanics lien law can take advantage of it. Section 514.01 reads, so far as material:
"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, * * * shall have a lien upon the improvement, * * *."
The section then lists the purposes for which a lien may be filed. Similarly, § 574.26 specifies those for whose benefit the bond is given. An action to foreclose a mechanics lien likewise had many similarities to the rights acquired under §§ 574.26 to 574.31. Thus, a mechanics lien must be filed within 90 days after doing the last item of work or furnishing the last item of skill, material, or machinery. § 514.08. The action to foreclose a mechanics lien requires all other lienholders to be joined as defendants. § 514.11. Section 514.12 provides that all such lienholders shall intervene in the original action to foreclose. Section 514.15 provides that if the proceeds of the property sold are insufficient to pay all lienholders in full, it shall be distributed pro rata among them. Section 574.31 provides in part:
"No action shall be maintained on any such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, * * *."
Section 514.29 provides:
"Any person entitled to the protection of such bond may maintain an action *55 thereon for the amount due him. He shall notify the obligee named in the bond of the beginning of such action, giving the names of the parties, describing the bond sued upon, and stating the amount and nature of his claim. No judgment shall be entered in such action within 30 days after the giving of such notice. The obligee, or any other person having a cause of action on such bond, may be admitted, on his motion, as a party to such action, and the court shall determine the rights of all parties thereto. If the amount realized on the bond be insufficient to discharge all such claims in full, such amount shall be distributed among the parties pro rata." (Italics supplied.)
We recently held in Anderson v. Breezy Point Estates, Minn., 168 N.W.2d 693, that our mechanics lien law, being a creature of our statutes, is to be liberally construed in favor of those for whose benefit it is enacted, but must be strictly construed so as to exclude those not within the purpose of the statute.
The same is true here. Section 574.26 is not intended to include those not named within the statute as beneficiaries thereof.
Thus it seems clear that in order to sue on a bond given pursuant to § 574.26 plaintiff must be one of the class for whose benefit the bond is given. In other words, plaintiff must be one of those named in the statute. There is good reason for so holding. If a party not included within the class for whose protection the bond is given is permitted to sue on a tort claim or on a claim not connected with the performance of the contract, it is conceivable that the amount of the bond might be so dissipated that those for whose protection it is given would be left without any protection at all. This thought is aptly stated by the Wisconsin court in Kniess v. American Surety Co., 239 Wis. 261, 266, 300 N.W. 913, 915, which involved an action on a bond given pursuant to a statute quite similar to ours. There the court said:
"* * * The intent of sec. 289.16 [of the Wisconsin statutes] is to make beneficiaries of the performance bond there prescribed only the political subdivision making the contract and those who furnish work, labor, materials, and other items listed in the statute. It is not intended by requiring a guarantee by the bonding company of faithful performance by the principal to extend the benefit of the bond to persons not specifically mentioned in the section. The reason for this is plain: The penalty of the bond in this case is 100% of the contract price. As pointed out in Osgood Co. v. Peterson Construction Co. 231 Wis. 541, 286 N.W. 54, there is occasion for concern lest a too liberal construction of the section deplete the fund available for the intended statutory beneficiaries. For example, a performance bond guaranteeing a contract involving an expenditure of $5,000 would give little relief to laborers and materialmen if they were compelled to share the fund with the holder of a substantial tort claim." (Italics supplied.)
We have held that "[a]ny condition contained in the bond in addition to those specified in the statute must be regarded as surplusage." County of Yellow Medicine v. Johnston, 176 Minn. 15, 17, 222 N.W. 289. Plaintiff here claims that it comes under the protection of the bond which requires faithful performance of the contract. We do not believe the bond can be so extended.
It is our opinion that plaintiff does not come within the class contemplated by the statute and for whose benefit this bond was executed. As a result, the court correctly granted summary judgment.
Affirmed.
NOTES
[1] The statute is not mentioned in our opinion, but the printed record shows that the contract and bond were executed in August 1894.