DEN MAR CONSTRUCTION COMPA-
NY, et al., Appellants (48990, 49299),

v.

The AMERICAN INSURANCE
COMPANY, Appellant (49022).

COUNTY OF MARSHALL,
Minnesota, Respondent,

v.

AMERICAN INSURANCE COMPANY,
Appellant (49022).

Nos. 48990, 49022 and 49299.

Supreme Court of Minnesota.

Aug. 17, 1979.

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow and Gerald S. Rufer, Fergus Falls, for Den Mar Const. Co., et al.

Briggs & Morgan and John L. Devney, St. Paul, Dickel, Johannson, Wall & Taylor and Lee E. Wall, Crookston, for The American Ins. Co.

Harold G. Myhre, County Atty., Warren, for respondent.

Heard before TODD, SCOTT, and MAXWELL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Den Mar Construction Company (Den Mar) was the low bidder on a drainage ditch project in Marshall County, Minnesota. Den Mar's bid was accompanied by a bid bond furnished by American Insurance Company (American). American refused to issue final performance and payment bonds to Den Mar. Because Den Mar had no final bonding, Marshall County awarded the contract to the second lowest bidder who furnished a performance bond which varied from the bidding requirements. Den Mar sued American, alleging damages for negligence and breach of an implied agreement to furnish the final bonds. Marshall County sued Den Mar and American based on the bid bond, and American sought indemnity from Den Mar. The jury found that

American had an implied contract to furnish final bonding to Den Mar, but that the breach by American was justified. The trial court granted summary judgment for Marshall County against American and Den Mar on the bid bond, and granted judgment for American against Den Mar on the indemnification claim. We affirm in part, reverse in part, and remand.

In January 1976, the County of Marshall received bids for the construction of County Ditch No. 45 in Marshall County, Minnesota. Den Mar, a partnership, submitted the lowest bid of $423,302.90. A bid bond listing Den Mar as principal and American as surety accompanied the bid.

Den Mar's bid was accepted on February 19, 1976. The contract papers and other documents were signed shortly thereafter. Den Mar did not furnish a 100-percent payment bond and 100-percent performance bond within 10 days as required by the bid specifications. The Board of Commissioners of Marshall County discussed the default at a regular meeting on April 6, 1976. The Board extended the time for furnishing bonds until April 15, 1976. Den Mar was aware of the extension and promised bonding.

Den Mar had difficulty in securing the bonding. Its bid bond surety, American, declined to furnish the bonding because it believed Den Mar had an insecure financial status and had submitted an underpriced bid. American had in the past furnished Den Mar various bonds. It had furnished bid bonds on 38 occasions. On each of 8 awarded contracts, American had also furnished performance and payment bonds.

On April 15, 1976, the Board again extended the time for bonding, on this occasion until April 20, 1976. However, the Board also resolved that if bonding was not received by that time, the contract would be awarded to the second lowest bidder, Roy Benson & Son, Inc. (Benson). Benson had submitted a bid for $482,005.23. Den Mar knew of this extension and resolution.

On April 20, 1976, Den Mar did not file bonding, but it did deliver a letter of intent by a bonding company to issue a payment bond of $168,000 and a performance bond of $260,000. This would be approximately a 40-percent payment bond and a 60-percent performance bond.

Apparently because no actual bonding was furnished and the promised bonding was less than the 100-percent bonding requirement, the county awarded the contract to Benson. Benson furnished a 100-percent performance bond but only a 50-percent payment bond.

Suit was subsequently commenced by the county on the bid bond against Den Mar and American for the difference in Den Mar's bid amount and Benson's bid amount. Den Mar also commenced suit against American for negligent failure to furnish final bonding, and for breach of an implied agreement to furnish final bonding. Den Mar also brought action against the county for wrongfully awarding the contract to Benson. Judgment was entered for the county on the bid bond, and judgment was entered in favor of American on Den Mar's claim of wrongful failure to furnish final bonding. Den Mar appeals from the judgments against it, and American appeals from the judgment on the bid bond.

The issues presented are:

(1) When the second lowest bidder on an awarded municipal contract furnishes only a 50-percent payment bond rather than a 100-percent payment bond, is the contract invalid for the purpose of assessing damages owed by the defaulting lowest bidder?

(2) Did the trial court properly refuse to submit jury instructions on the issue of American's alleged duty in tort to furnish final bonding to Den Mar?

(3) Did the trial court properly instruct the jury concerning American's justifiable breach of an implied contract to furnish final bonding to Den Mar?

1. Both Den Mar and American argue that they are not liable to Marshall County for the difference in amount between Den Mar's bid and the second lowest bid because the county allegedly awarded the contract to the second lowest bidder in an unlawful

manner. This argument is based on the fact that the second lowest bidder, Benson, furnished only a 50-percent payment bond rather than a 100-percent payment bond as required by the bid specifications. Benson did, however, furnish a 100-percent performance bond as required by the bid invitation. The county argues that Den Mar and American have no standing to challenge the deficiency in Benson's payment bond.

This challenge to Benson's contract surfaces the interrelationship of bonding statutes applicable to ditch construction and bonding statutes applicable to general contractors. Minn.St. 106.221, subd. 1, pertains to county ditches and provides in part:

"* * * The contractor shall make and file with the auditor or clerk a bond, with good and sufficient surety, to be approved by the auditor or clerk, in a sum not less than 75 percent of the contract price of the work. Every such contract and bond shall embrace all the provisions required by this chapter *and provided by law* for bonds given by contractors for public works, and shall be conditioned as provided by statute in case of public contractors for the better security of the contracting county or counties and of parties performing labor and furnishing material in and about the performance of the contract. * * * Such contractor shall be considered a public officer, and such bond an official bond within the

meaning of the statutory provisions construing the official bonds of public officers as security to all persons, and providing for actions on such bonds by any injured party." (Italics supplied.)

American and Den Mar then argue that the highlighted portion of the statute incorporates the provisions of Minn.St. 574.26, which deals with contractor's bonds in general. Section 574.26 provides in part:

"No contract with the state, or with any municipal corporation or other public board or body thereof, for the doing of any public work, shall be valid *for any purpose*, unless the contractor shall give bond to the state or other body contracted with, for the use of the obligee, the state and of all persons doing work or furnishing skill, tools, machinery, or materials * * * conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill, materials, * * *. The penalty of such bond shall be not less than the contract price. * * *" (Italics supplied.)

Because Benson furnished only a 50-percent payment bond, American and Den Mar argue the contract with Benson is void, even for the purpose of assessing damages arising out of Den Mar's default.

■ We reject this contention. Even if the provisions of Minn.St. 574.26 apply to Minn.St. 106.221,[1] neither Den Mar nor

---

1. Early Minnesota case law indicates that the provisions for bonding under Minn.St. 574.26 relating to contractors' bonds generally do not apply to bonds under Minn.St. 106.221 relating to bonds for ditch construction. It would appear, therefore, the provision of § 574.26 declaring the contract void might not apply to the § 106.221 ditch bonds.

In *Rosman v. Bankers Surety Co.,* 126 Minn. 435, 148 N.W. 454 (1914), this court held that the statutory requirement of giving notice prior to commencement of a suit on a public contractor's bond had no application to suit on a drainage ditch contractor's bond. The court stated (126 Minn. 439, 148 N.W. 455): "The legislature undoubtedly had some purpose in view of classifying drainage bonds as official bonds * * *. [The statutory provision] declares that the drainage contractor shall be considered a public officer, and his bond an official bond within the meaning of the statute constru-

ing such bonds. There are two classes of public bonds, distinctly classified by the statutes, namely, the ordinary official bond, and the public building contractor's bond. * * * As to the former, no notice before suit is necessary; as to the latter [under section 8249, G.S.1913], a 90 days' notice is required. If we are to apply the statute declaring this bond an official bond, then the provisions, * * * relating to actions thereon, must control. * * * It follows therefore that section 8249 * * * has no application to the drainage bond * * *."

This court followed the *Rosman* case in *Wold v. Bankers Surety Co.,* 133 Minn. 90, 157 N.W. 998 (1916). Although there exists no recent precedent on the interrelationship between Minn.St. 106.221 and 574.26, these early cases suggest that the provisions of § 574.26, concerning contractors' bonds do not apply to drainage bonds under § 106.221, at least insofar as the validity of the drainage bonds is at issue.

American have standing to challenge the performance bond furnished by the second lowest bidder. The beneficiaries of bonding are the public corporation, laborers, and materialmen. Minn.St. 574.26. See, *A. J. Chromy Const. Co. v. Com'l Mechanical*, 260 N.W.2d 579 (Minn.1977); *Ceco Steel Products Corp. v. Tapager*, 208 Minn. 367, 294 N.W. 210 (1940). Thus, we have indicated that the effect of defective bonding will differ, depending on who is challenging the defect. In *Lundin v. Township of Butternut Valley*, 172 Minn. 259, 214 N.W. 888 (1927), this court held that a contractor could not recover against a township for construction of a bridge. Although the main reason for denial of compensation was due to the faulty nature of the bridge, the court stated another reason was that no bond had been given by the contractor as required by statute, and therefore "the contract on which plaintiff relies must be held void." 172 Minn. 261, 214 N.W. 889.

On the other hand, this court in *Waterous Engine Works Co. v. Village of Clinton*, 110 Minn. 267, 125 N.W. 269 (1910), held that a bond issued at approximately 50 percent of the required statutory amount was valid against the sureties for the purpose of requiring the unpaid materialman to pursue his claim against the surety before pursuing a claim against the municipality. This court said (110 Minn. 274, 125 N.W. 271):

"Where it is claimed that an instrument is void because of a variance between its terms and those required by a statute, the character of the variance must always be taken into consideration. *For the purpose of determining the effect of a variance it is always pertinent to inquire who may take advantage of it.* If an action were brought against the sureties upon the bond we are considering, they could not successfully defend against it because it was for an amount less than that required by the statute, for it would be impossible to see how that fact could in any way be detrimental to them. The departure from the statute in this bond is only as to the amount of the security." (Italics supplied.)

Also persuasive in demonstrating that neither Den Mar nor American have standing to challenge the bonding under § 574.26 is the case of *Healy P. & H. Co. v. Minneapolis-St. Paul Sanit. Dist.*, 284 Minn. 8, 169 N.W.2d 50 (1969), where this court held that persons who were not beneficiaries of the bonding statute could not sue under § 574.-26 to recover on the bond for damages caused during construction. This court said (284 Minn. 16, 169 N.W.2d 55):

"Thus it seems clear that in order to sue on a bond given pursuant to § 574.26 plaintiff must be one of the class for whose benefit the bond is given. In other words, plaintiff must be one of those named in the statute."

■ We hold that even if § 574.26 applied to the ditch bonding in this case, the defaulting bidder, Den Mar, and its bonding company, American, have no standing to invoke § 574.26 as a basis for attacking the validity of the county's contract with Benson. Den Mar and American were not intended to receive the protection of § 574.26.

■ American, and apparently Den Mar, also seek to raise the argument that the 50-percent deficiency in Benson's payment bond violated the requirements of competitive bidding, which impose a duty on the county to accept only responsible bids without giving any undue advantage to any bidder. In view of the fact that Den Mar failed to furnish any final bonding whatsoever, we are not convinced that Benson obtained any unfair advantage over Den Mar so as to be a material variance from competitive bidding requirements. See, *Village of Excelsior v. F. W. Pearce Corp.*, 303 Minn. 118, 226 N.W.2d 316 (1975); *Foley Brothers, Inc. v. Marshall*, 266 Minn. 259, 123 N.W.2d 387 (1963); *Nielsen v. City of St. Paul*, 252 Minn. 12, 88 N.W.2d 853 (1958).

■ 2. Den Mar argues that because of the peculiar relationship between it and American, a duty in tort was imposed upon American to use reasonable efforts in furnishing a performance bond and payment bond. This argument is without merit.

A somewhat similar argument was made in *Rasmussen v. The Prudential Ins. Co.,* 277 Minn. 266, 152 N.W.2d 359 (1967), wherein an applicant for an insurance policy contended that the insurance agent was negligent in not being more expeditious in delivering the proposed policy. This court rejected the argument, stating that there is no duty in tort to accept or reject an application for insurance. Accord, *Tjepkes v. State Farmers' Mut. Ins. Co.,* 193 Minn. 505, 259 N.W. 2 (1935); *Schliep v. Commercial Casualty Ins. Co.,* 191 Minn. 479, 254 N.W. 618 (1934).

Similarly, no duty of care was imposed upon American to accept Den Mar's application for the performance bond or payment bond. Any duty must be based on contract, and the trial court properly refused to instruct the jury that American could be liable for negligent failure to issue the final bonding.

■ 3. Den Mar alleged that American had implicitly agreed to furnish payment and performance bonds upon acceptance of its bid, and that the breach of this agreement caused Den Mar's default on the bid. The trial court, relying on language appearing in *Independent School District No. 24 v. Weinmann,* 243 Minn. 469, 68 N.W.2d 248

2. Generally, a surety on a bid bond has no obligation to write a performance bond or payment bond in the event the bid is accepted. *Elk River Concrete Products Co. v. American Cas. Co.,* 268 Minn. 284, 129 N.W.2d 309 (1964). Generally, therefore, the surety on the bid bond may reject the principal's application for performance and payment bonds. One rationale behind the principle is that the issuance of a bid bond usually is a separate and distinct transaction from the issuance of the performance or payment bond.

However, special circumstances may exist whereby the surety's refusal to issue performance and payment bonds is wrongful. This conclusion is implicit in the language of *Independent School District No. 24 v. Weinmann,* 243 Minn. 469, 68 N.W.2d 248 (1955). In that case, a surety sought indemnification from the principal for amount paid by the surety on a bid bond after the principal had defaulted on a bid award by failing to secure a performance bond. The principal, Weinmann, counterclaimed for damages against the surety, St. Paul-Mercury Indemnity Company, on the basis that Mercury had caused the default by

(1955), instructed the jury concerning an implied agreement to furnish final bonding.[2] The trial court submitted these two questions to the jury:

"Question No. 1. Was there an implied agreement by defendant American Insurance Company to execute final payment and performance bonds to the plaintiffs? ANSWER: (Yes or No).

"Question No. 2.

"INSTRUCTION: Answer the following question only if you have answered #1 'yes.' Do not answer Question #2 if your answer to question #1 was 'no.'

"Was American Insurance Company justified in refusing to issue payment and performance bonds to Den Mar Construction Company on the Tamarac project? ANSWER: (Yes or No)."

The jury answered "yes" to both questions. Thus, Den Mar was denied recovery on the contract claim, and the jury did not reach the question of damages. On appeal, Den Mar argues these instructions were improper because it placed upon it the burden of showing that American was not justified in breaching the contract rather than placing the burden on American to prove the affirmative defense of justification. We agree.

failing to issue a performance bond. This court held in favor of Mercury, stating (243 Minn. 474, 68 N.W.2d 251): " * * * The trial court found that Weinmann did not submit his bid and proposal in reliance upon representations, conduct, or agreement with Mercury and that he therefore had not shown any right of recovery on his counterclaim. Weinmann's own testimony establishes that no serious discussion concerning the furnishing of a performance bond took place until January 4, 1951, *after* the submission and opening of the bids. Weinmann's subjective belief that the surety writing the bid bond would also write the performance bond does not necessarily bind Mercury, especially in view of the two past noncommittal transactions between the parties and Weinmann's understanding that he had to fulfill certain requirements before the performance bond would be written."

Although this court held in favor of the surety on the bid bond, the implication from this quoted language is that under the proper fact situation a surety on a bid bond may be bound by an implicit agreement to issue final bonding.

■ The burden of proving a justifiable breach, of course, is upon the defendant obligor rather than the plaintiff obligee. See, *Fidelity Bank & Trust Co. v. Fitzimons*, 261 N.W.2d 586 (Minn.1977). The trial court in instructing the jury on the issue of justifiable breach did not properly notify the jury that American had the burden of proving the defense. The judge told the jury:

> " * * * Ladies and gentlemen, because of the fact that we have changed the questions in some respect, some problems in construction may arise. In order to answer Question No. 2, no * * * [t]he greater weight of the evidence must support such an answer otherwise you should answer that question, yes."

This instruction placed the burden of proof on Den Mar. Counsel for Den Mar objected to the instructions. The trial judge in response to the objection stated that the burden of establishing unjustified failure to perform must necessarily rest upon Den Mar. This was error. The burden of establishing the defense of justifiable breach was upon American.

■ The verdict on this issue must be set aside because of the fundamental errors in the instruction concerning justifiable breach. The matter is remanded to the trial court for retrial on the issue of justifiable breach of the implied contract. If the breach is unjustified, damages also must be ascertained. The judgment in favor of American against Den Mar is vacated. The judgment in favor of Marshall County against Den Mar and American is affirmed. The judgment as to the existence of an implied contract is affirmed.

Affirmed in part; reversed in part; and remanded.

OTIS, J., took no part in the consideration or decision of this case.